STATE of Wisconsin, Plaintiff-Respondent,

v.

David S. LEIGHTON, Defendant-Appellant.†

Court of Appeals

*No. 99–2614–CR. Submitted on briefs March 27, 2000.—Decided May 9, 2000.*

2000 WI App 156

(Also reported in 616 N.W.2d 126.)

†Petition to review denied.

710

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel Snyder* of Park Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Donald V. Latorraca, Barbara L. Oswald*, assistants attorney general of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. David Leighton appeals from a judgment of conviction entered upon a jury's verdict finding him guilty of one count each of first-degree intentional homicide, armed robbery, burglary and arson, all as party to a crime, and one count of conspiring to manufacture or deliver drugs, contrary to WIS. STAT. §§ 940.01(1), 943.32(2), 943.10(1)(a), 943.02(1)(a), 939.05, 161.41(1x), 161.41(1)(h)3 and 161.14(4)(t).[2] Leighton additionally appeals from the denial of his postconviction motions.

¶ 2. Leighton argues that: (1) he was denied his right to a speedy trial; (2) the trial court abused its discretion by denying his motion for adjournment; (3) he was denied the effective assistance of counsel; (4)

---

[2] Although the judgment of conviction references WIS. STAT. § 161.41.14(4)(t), we presume the judgment of conviction meant to refer to § 161.14(4)(t). WISCONSIN STAT. §§ 161.41(1x), 161.41(1)(h)3 and 161.14(4)(t) have been renumbered 961.41 (1x), 961.41(1)(h)3 and 961.14(4)(t) pursuant to 1995 Wis. Act 448 §§ 243–266.

the trial court erroneously exercised its discretion by excluding evidence; (5) WIS. STAT. § 973.014(1),[3] which permits a trial court to fix a parole eligibility date, is unconstitutional; (6) the trial court erroneously exercised its discretion in fixing his particular parole eligibility date; and (7) the trial court erred in its determination of the amount of restitution. We reject Leighton's arguments and affirm the judgment.

### BACKGROUND

¶ 3.  On October 12, 1995, emergency workers, responding to a fire in a residence owned by Robert Clark, discovered Clark's body. A medical examiner determined that Clark had died as a result of a gunshot wound to the back of his head. A flashlight found at the scene bore the fingerprint of Jared Hamm, who was arrested in May of 1996. Hamm implicated Leighton in Clark's murder.

¶ 4.  On May 21, 1996, special agents with the Wisconsin Department of Justice questioned Leighton about the homicide. As the result of an unrelated probation hold, the Sawyer County Sheriff's Department arrested Leighton later that day. A criminal complaint was filed against Leighton on June 3, 1996. The parties did not proceed to trial until August 1998. Following the jury trial, Leighton was convicted. His motions for postconviction relief were denied and this appeal followed.

---

[3] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

## ANALYSIS

### I.  THE CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL

■■■

¶ 5.    Leighton argues that he was denied his constitutional right to a speedy trial. The right to a speedy trial is found in the Sixth Amendment to the United States Constitution and art. I, § 7, of the Wisconsin Constitution.[4] Whether a defendant has been denied the right to a speedy trial is a constitutional question that this court reviews de novo. *See State v. Ziegenhagen*, 73 Wis. 2d 656, 664, 245 N.W.2d 656 (1976). The trial court's underlying findings of historical fact, however, will be upheld unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2); *State v. Clappes*, 136 Wis. 2d 222, 235, 401 N.W.2d 759 (1987).

---

[4] The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy trial and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

In turn, art. I, § 7, of the Wisconsin Constitution provides:

> **Rights of accused.** SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

¶ 6. Under both the United States and Wisconsin Constitutions, to determine whether a defendant has been denied the right to a speedy trial, a court must consider: (1) the length of the delay; (2) the reason for the delay, i.e., whether the government or the defendant is more to blame for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) whether the delay resulted in any prejudice to the defendant. *See Doggett v. United States*, 505 U.S. 647, 651 (1992); *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Day v. State*, 61 Wis. 2d 236, 244, 212 N.W.2d 489 (1973).

A. The Length of the Delay

¶ 7. The first factor, the length of the delay, is a threshold consideration—the court must determine that the length of the delay is presumptively prejudicial before inquiry can be made into the remaining three factors. *See Doggett*, 505 U.S. at 651–52 ("[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."); *Hatcher v. State*, 83 Wis. 2d 559, 566–67, 266 N.W.2d 320 (1978). If the length of the delay is presumptively prejudicial and the court determines that, under the totality of the circumstances, the defendant has been denied the right to a speedy trial, the charges must be dismissed. *See Barker*, 407 U.S. at 522.

¶ 8. In *Doggett*, the United States Supreme Court recognized that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Id.* at 652 n.1. Here, there was a twenty-six-month delay from the filing of the criminal

complaint in June of 1996 to Leighton's trial in August 1998. *See id.* at 655 (speedy trial inquiry triggered by arrest, indictment, or other official accusation).[5] We conclude that this amount of time is presumptively prejudicial, *see id.* at 652 n.1, and turn to the remaining three factors.

## B. The Reason for the Delay

¶ 9. In *State v. Borhegyi*, 222 Wis. 2d 506, 588 N.W.2d 89 (Ct. App. 1998), this court recognized that the reasons for the delay are assigned differing weights:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Id.* at 512 (quoting *Barker*, 407 U.S. at 531).

¶ 10. Here, the State argues that the delay in bringing Leighton's case to trial was directly attributable to the defense. On June 3, 1996, the State filed a criminal complaint alleging that Leighton had committed arson and felony theft. Leighton made his initial appearance before the court on June 11. At the initial appearance, Leighton waived his right to a timely preliminary hearing and his counsel requested a scheduling conference for sometime in July. At the July 15 scheduling conference, the parties mutually

---

[5] We use the date the complaint was filed, not the date of Leighton's arrest, because he was arrested pursuant to an unrelated probation hold.

requested adjournment. On September 9, Leighton's attorney requested another adjournment "to see whether we can't resolve this matter." The matter was set for a November 25 scheduling conference at which Leighton's attorney requested a continuance to wait for some information from the State. Although present on each date, Leighton never personally objected to any of these continuances.

¶ 11.    On April 14, 1997, the attorneys mutually agreed to yet another continuance, and the scheduling conference was reset for June 30. The court asked defense counsel if he felt it necessary to have his client present. Defense counsel responded: "No, I don't, your Honor. I told him what was going to happen and he is in full agreement." On June 30, defense counsel requested a continuance to allow Leighton's case to follow Hamm's companion case. As Leighton was not present, the court asked defense counsel if his client had any objection, to which defense counsel replied: "He has no objection." The scheduling conference was reset for October 6.

¶ 12.    At the October 6 scheduling conference, a preliminary hearing was set for October 29. Meanwhile, Leighton retained new counsel, who requested an adjournment of the October 29 preliminary hearing. At the November 7 preliminary hearing, the State presented its case. As an amended complaint had just been filed that day, defense counsel requested an adjournment in order to determine what, if any, defense witnesses would need to be called.[6] The trial

---

[6] The amended complaint alleged first-degree intentional homicide, armed robbery, burglary, and arson, all as party to a crime, and additionally alleged conspiracy to deliver a controlled substance.

court granted the adjournment and withheld its finding on the bindover.

¶ 13. At the November 19 continuation of the preliminary hearing, defense counsel presented no witnesses or evidence and, after hearing the parties' arguments, the court bound the matter over for trial. The State then filed an information and indicated its willingness to proceed with the arraignment. Defense counsel, however, requested that a different arraignment date be set in order to give him an opportunity to review the information with Leighton. The parties agreed to set the arraignment date and Leighton was arraigned on December 12.

¶ 14. On December 19, the parties appeared for a bond hearing and the court adjourned the matter in order to give the State an opportunity to review Leighton's parents' financial statement. On January 7, 1998, the parties appeared for the bond hearing. After the court's determination on Leighton's request for bond modification, the State indicated that it was "prepared to set any type of date that [defense counsel] wants set, whether it's a . . . break in schedule or motion filing schedule, a hearing for motions or even a trial date." Defense counsel, however, requested two weeks to prepare for scheduling the time for filing all motions. The parties subsequently appeared for a scheduling conference on January 30, at which time defense counsel requested that a jury trial be scheduled for late July or early August. The court scheduled the trial for the week of August 3, although the State indicated its willingness to proceed to trial as early as April.

¶ 15. On May 7, 1998, the defense informed the court that it had retained the help of an attorney who had a scheduling conflict with the August trial date. Defense counsel stated that although Leighton was

"reluctant to want an adjournment," he certainly wanted two lawyers working for him on the case. Consequently, defense counsel advised the court that it might, before the end of the week, file a motion for an adjournment of the trial date based on the unavailability of the second attorney. Defense counsel, however, did not move to adjourn the trial date until June 29. The motion to adjourn was denied, and shortly thereafter, followed by a motion to dismiss based on Leighton's right to a speedy trial. The court denied Leighton's motion to dismiss, and the parties proceeded to trial on August 3.

¶ 16.   Leighton argues that the two adjournment requests made by defense counsel in Leighton's absence cannot be weighed against him. With respect to defense counsel's various other adjournment requests, Leighton contends that any delays by his first attorney are indicative of the inaction alleged as a basis of his ineffective assistance of counsel claim.[7] With respect to adjournment requests by his second attorney, Leighton argues that these were reasonable requests to prepare for trial and may therefore not be weighed against him.

¶ 17.   To support his contention regarding his first attorney, Leighton cites the following language from *Barker*, 407 U.S. at 536:

> We do not hold that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances. There may be a situation in which the defendant was represented by incompetent counsel, was severely prejudiced, or even

---

[7] We address Leighton's ineffective assistance of counsel claim in a subsequent portion of this opinion. *See* infra ¶¶ 33–45.

cases in which the continuances were granted ex parte.

However, *Barker* further recognized that "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates . . . that the defendant did not want a speedy trial." *Id.* at 536.

¶ 18.  Leighton does not dispute that he was present for all but two of his first attorney's adjournment requests. At the postconviction hearing, Leighton's first attorney explained that he and his client had agreed that it would be in Leighton's best interest "to follow the trial and the preliminary of Mr. Hamm, and to determine what evidence, if any, the State had to involve Hamm or Leighton." In other words, the defense's strategy was one of delay. The record supports the conclusion that delay was integral to Leighton's defense strategy, as both Leighton and his counsel wanted to see the State's evidence in the case against Hamm and work toward a global settlement of this and at least one other pending case.

¶ 19.  With respect to the adjournments requested by his subsequent attorney, covering the period from October 13, 1997 to the August 3, 1998 trial, Leighton argues that these were reasonable adjournment requests for time to prepare for trial and cannot be weighed against the defense. We agree with Leighton's premise, but not, however, with his conclusion. In *Hadley v. State*, 66 Wis. 2d 350, 225 N.W.2d 461 (1975), our supreme court recognized that "a reasonable request by counsel for time to prepare for trial cannot be interpreted as a willful delay of the trial or be used by the state to circumvent a defendant's constitutional right to a speedy trial." *Id.* at 359–60. In *Hadley,*

however, the defendant had made at least three speedy trial demands, thereby invoking the time limitations imposed by WIS. STAT. § 971.10. Although reasonable requests for time to prepare for trial may not be weighed against the defense, neither may the delays resulting from the defense's requests be weighed against the State, especially in the absence of a speedy trial demand.[8] The record before us strongly indicates that Leighton did not want a speedy trial.

C.   Assertion of the Right to a Speedy Trial

¶ 20.   Most telling with respect to the defense's delay strategy is the absence of the third factor in our inquiry—an assertion of Leighton's right to a speedy trial. We acknowledge that "[a] defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." *Hadley*, 66 Wis. 2d at 361 (quoting *Barker*, 407 U.S. at 527). The *Hadley* court nevertheless noted: "[T]he defendant ha[s] some responsibility to assert the right to speedy trial. . . . [T]he purpose of requiring some showing of assertion of right [is] necessary to distinguish cases . . . where there [is] evidence that the defendant did not want to be brought to trial." *Id*. at 361.

¶ 21.   Leighton does not contend that he made an express request for a speedy trial; rather, he argues that two letters written by him to the trial court imply

---

[8] In *Hadley v. State*, 66 Wis. 2d 350, 359, 225 N.W.2d 461 (1975), the court's discussion was in context of the State's attempts to argue that a reasonable two-month adjournment request by defense counsel "should be charged against the defendant and constitute[ ] a waiver, *pro tanto*, of the right to speedy trial." Unlike Leighton, however, Hadley had thrice demanded his speedy trial right.

speedy trial requests. We disagree. Contrary to Leighton's contentions, the letters merely requested help from the trial court in obtaining various police records from the State. This request for assistance with discovery does not evince an assertion of Leighton's speedy trial right. Given Leighton's acquiescence to his counsels' various adjournment requests, coupled with the absence of an assertion of his right to a speedy trial, we conclude that Leighton did not want a speedy trial but, rather, sought delay as part of his defense.

D.   Prejudice from the Delay

¶ 22.   The prejudice factor is assessed "in light of a defendant's interests which the speedy trial right is designed to protect." *Borhegyi*, 222 Wis. 2d at 514. Three interests must be considered: "(1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility that the defense will be impaired." *Id*. The State urges this court to place little, if any, weight on any claim of prejudice flowing from Leighton's pre-trial incarceration. It argues that Leighton's confinement did not result solely because of charges in this case. Leighton had been sentenced after probation revocation on a misdemeanor offense to a fifty-five-day jail term and was also being held on a charge of sexual assault of a child. The State does not dispute that the delay may have had a negative effect on Leighton's anxiety and concern. The bulk of the State's argument, however, focuses on the third interest—impairment to the defense.

¶ 23.   The United States Supreme Court has recognized that impairment to the defense is the "most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the

entire system." *Barker*, 407 U.S. at 532. The defense may be impaired "(1) if witnesses die or disappear during a delay; (2) if defense witnesses are unable to recall accurately events of the distant past; or (3) if a defendant is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." *Scarbrough v. State*, 76 Wis. 2d 87, 98, 250 N.W.2d 354 (1977) (internal quotations omitted).

¶ 24. The State contends that Leighton has not shown how he was prejudiced by the delay. Leighton's principal claim of prejudice "lies in the unavailability of some witnesses to defense counsel and the dimming of the recollections of other witnesses." Citing a brief in support of his pretrial motion to dismiss, Leighton contends that various named and unnamed witnesses could not be found for trial. Of those witnesses actually identified, all testified at trial and were subject to examination by the defense. Regarding the witnesses' recollections, Leighton again fails to specifically identify whose memory was affected and how he was prejudiced by any failed recollection.

¶ 25. Nevertheless, a defendant need not show prejudice in fact to evince a speedy trial violation. *See Hadley*, 66 Wis. 2d at 364 ("[N]o burden is placed upon the defendant to show he was prejudiced in fact."). The *Hadley* court noted that "while . . . there may indeed be prejudice in fact because of the inability to produce defense witnesses after a protracted period of time, most interests of a defendant are prejudiced as a matter of law whenever the delay, *not the result of the defendant's conduct*, is excessive." *Id.* (emphasis added).

¶ 26. Here, the majority of the adjournments were granted at the behest of the defense, whether as

strategy or in preparation for trial. On more than one occasion, adjournments were granted despite the State's willingness to move the case forward. Significantly, Leighton never asserted his right to a speedy trial. Under the totality of these circumstances, we conclude that Leighton was not deprived of his constitutional right to a speedy trial.

II. The Denial of Leighton's Motion to Adjourn

■

¶ 27.   Notwithstanding his arguments regarding the violation of his right to a speedy trial, Leighton contends that the trial court abused its discretion by denying one of his motions for adjournment. The decision whether to grant or deny an adjournment request is left to the trial court's discretion and will not be reversed on appeal absent an erroneous exercise of discretion. *See State v. Wollman*, 86 Wis. 2d 459, 468, 273 N.W.2d 225 (1979). Because the denial of a continuance "may raise questions relative to a defendant's sixth amendment right to counsel and fourteenth amendment right to due process of law . . . this court's task on review is to balance the defendant's right to adequate representation by counsel against the public interest in the prompt and efficient administration of justice." *State v. Fink*, 195 Wis. 2d 330, 338, 536 N.W.2d 401 ( Ct. App. 1995). However, "probing appellate scrutiny of a decision to deny a continuance is not warranted." *Id.* at 338–39.

¶ 28.   A trial court balances the following six factors in determining whether to grant a continuance: (1) the length of the delay requested; (2) whether the "lead" counsel has associates prepared to try the case in his [or her] absence; (3) whether other continuances had been requested and received by the defendant; (4)

the convenience or inconvenience to the parties, witnesses and the court; (5) whether the delay seems to be for legitimate reasons or whether its purpose is dilatory; (6) other relevant factors. *See Phifer v. State*, 64 Wis. 2d 24, 31, 218 N.W.2d 354 (1974).

¶ 29.  Turning to the present case, on May 7, 1998, the defense informed the court that it had retained the help of attorney Gary Sherman, who had a scheduling conflict with the August trial date. Defense counsel advised the court that it might, before the end of the week, file a motion for an adjournment of the trial date based on Sherman's unavailability. Defense counsel, however, did not move to adjourn the trial date until June 29. Leighton based his motion to adjourn on Sherman's scheduling conflict with the August 3 trial date and Leighton's inability to subpoena certain witnesses. Defense counsel sought to adjourn the trial until some time after September 26. The motion was denied.

¶ 30.  In its decision denying Leighton's motion to adjourn, the trial court noted that because Sherman became involved in the case after the trial date had been set, he should have adjusted his schedule rather than requesting the court to adjust its schedule. Lead defense counsel did not argue that he was unavailable for the scheduled date, and it is undisputed that Sherman had never made an appearance in the case nor filed a notice of retainer.

¶ 31.  With respect to witnesses, defense counsel expressed concern that he did not have adequate time to secure the appearances of Ron and Amy Cooper, Illinois residents. The court was satisfied with the State's assurance that the Coopers would appear as witnesses pursuant to the Uniform Act for the Extradition of Witnesses. Defense counsel also expressed

difficulty locating witnesses Robin Frey and Gloria (Delgado) Hamm, Jared Hamm's wife. Ultimately, these witnesses testified at trial.

¶ 32.  Although defense counsel requested an adjournment of just under two months, the August trial date had been scheduled since January. The trial court noted: "This could go on and on forever; and I realize when we set things, we all have calendars and we know this is a big case and I guess you've got to adjust your calendar around that and live with it [b]ecause it was difficult getting it on at this time." The court further recognized that the victim's family had "an interest in keeping this matter on track." With respect to Leighton himself, defense counsel noted that Leighton's "motivation is not to get it adjourned," although he nevertheless desired representation by both lead counsel and co-counsel Sherman. In consideration of these factors, we conclude that the trial court properly exercised its discretion by denying Leighton's motion to adjourn the August 3 trial date.[9]

---

[9] The denial of Leighton's motion to adjourn was followed by a motion to dismiss based on the violation of Leighton's speedy trial right. As the State noted, Leighton never attempts to reconcile his inconsistent claims that the trial court erred by, on the one hand, failing to grant the adjournment and, on the other hand, violating his right to a speedy trial. We think that "[h]is complaint borders on chutzpah." *State v. Windom*, 169 Wis. 2d 341, 353, 485 N.W.2d 832 (Ct. App. 1992) (Fine, J., concurring).
The Yiddish word "chutzpah" is defined by the classic example of the gall displayed by a young man who, after he is convicted of murdering his parents, seeks leniency because he is an orphan. *See* L. ROSTEN, THE JOYS OF YIDDISH 93 (Pocket Book 1970).

III. Ineffective Assistance of Counsel

¶ 33. Leighton argues that his first attorney denied him effective assistance of counsel. Specifically, he contends that his counsel was ineffective by failing to (1) file a formal discovery demand; (2) interview witnesses on behalf of the defense; (3) take witness statements; (4) investigate the crime scene; or (5) conduct any other investigation. This court's review of an ineffective assistance of counsel claim is a mixed question of fact and law. *See State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The trial court's findings of fact will not be disturbed unless they are clearly erroneous. *See id.* "However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law which this court reviews independently of [the trial court]." *Id.*

¶ 34. Wisconsin employs a two-prong test to determine the validity of an ineffective assistance of counsel claim. *See id.* (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). To succeed on his claim, Leighton "must show both (1) that his counsel's representation was deficient and (2) that this deficiency prejudiced him." *Id.* at 768 (citing *Strickland*, 466 U.S. at 694). Further, we may reverse the order of the tests "or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice." *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990) (citing *Strickland*, 466 U.S. at 697).

¶ 35. In order to establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Id.* at 127 (quoting *Strickland*, 466 U.S. at 687). However, "every effort is made to avoid determinations of ineffectiveness based on hindsight . . . and the burden is placed on the defendant to overcome a strong presumption that counsel acted reasonably within professional norms." *Id.* In reviewing counsel's performance, we judge the reasonableness of counsel's conduct based on the facts of the particular case as they existed at the time of the conduct, and determine whether, in light of all the circumstances, the omissions fell outside the wide range of professionally competent representation. *See Strickland*, 466 U.S. at 690.

¶ 36.   The prejudice prong of the *Strickland* test is satisfied where "the attorney's error is of such magnitude that there is a reasonable probability that, absent the error, 'the result of the proceeding would have been different.'" *Erickson*, 227 Wis. 2d at 769 (quoting *Strickland*, 466 U.S. at 694).

¶ 37.   Leighton claims his first attorney was ineffective for failing to file a formal discovery demand. Leighton's first attorney, however, had withdrawn from the case before the preliminary hearing was held. Because there is no right to discovery prior to a preliminary examination, *see* WIS. STAT. § 971.31; *see also In re T.M.J.*, 110 Wis. 2d 7, 12, 327 N.W.2d 198 (Ct. App. 1982), we conclude that counsel was not deficient for failing to file a formal discovery demand.

¶ 38.   Turning to Leighton's arguments about his counsel's failure to investigate, we note that a defendant who alleges a failure to investigate on the part of his or her counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the case. *See State v.*

*Flynn*, 190 Wis. 2d 31, 48, 527 N.W.2d 343 (Ct. App. 1994). A defendant must base a challenge to counsel's representation on more than speculation. *See id.* Further, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

¶ 39.  Here, Leighton argues that because Hamm was the sole witness against him, counsel should have investigated Hamm's background in order to establish a basis to attack Hamm's credibility. However, Leighton fails to identify what information counsel might have found to attack Hamm's credibility. Because Leighton's contention fails to rise above the level of mere speculation, *see Flynn*, 190 Wis. 2d at 48, we conclude that counsel was not deficient by failing to investigate Hamm's background.

¶ 40.  Leighton further argues that counsel was deficient for failing to interview witnesses on his behalf or otherwise take witness statements. Counsel's actions, however, "are usually based . . . on information supplied by the defendant." *Strickland*, 466 U.S. at 691. Further, "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *State v. Pitsch*, 124 Wis. 2d 628, 637, 369 N.W.2d 711 (1985). Counsel's failure to pursue certain investigations may not be challenged later as unreasonable when the defendant has given counsel the reason to believe that pursuing those investigations would be fruitless. *See Strickland*, 466 U.S. at 691.

¶ 41.  At the *Machner* hearing,[10] counsel noted that he relied on the representations his client had

---

[10] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) ("[I]t is a prerequisite to a claim of ineffec-

made. Counsel explained that Leighton told him "that at the time preceding the homicide, he was in the tavern . . . with his mother, and that he stayed with her until she closed the bar. He then left, alone, went home, ate some pizza and went to bed. There were no other witnesses." According to counsel, Leighton also told him that he was not involved in Clark's homicide or the arson of his home and that he did not know who killed Clark. Given these representations, it was reasonable for counsel to conclude that pursuing other alibi witnesses would be fruitless to Leighton's defense. *See Strickland*, 466 U.S. at 691.

¶ 42. In any event, any alleged deficiency did not result in prejudice. Leighton argues that the unavailability or faded recollections of specific witnesses impaired his ability to present his defense. The only witnesses referenced in his brief, however, are the Coopers, Bob Purvis, an unnamed waitress and "various Leighton family members whose memories . . . had faded." Leighton examined the Coopers and Purvis at trial. He does not identify the "waitress," nor indicate how her testimony would help his defense.[11] With regard to the "various family members," Leighton does not identify which family members had faded memories or how their faded memories prejudiced him.

¶ 43. Leighton additionally takes issue with his counsel's failure to investigate the crime scene. The homicide and arson, however, occurred in October 1995, and Leighton was not charged until June of 1996.

tive representation on appeal to preserve the testimony of trial counsel.").

[11] Although Leighton does not identify the "waitress," he did not dispute the State's contention that the waitress was Laura Kuschel, who was ultimately called by the defense at trial.

Therefore, even if counsel had viewed the scene immediately after being appointed to defend Leighton, several months had passed. In any event, at the *Machner* hearing, Leighton's second attorney conceded that the State Crime Laboratory had conducted its own examination of the crime scene and that the defense had access to photographs and a report of the crime scene investigation. Although his second attorney noted that a law enforcement investigation differed from a defense investigation, he nevertheless stated that "the investigation in this case was extremely thorough." Moreover, Leighton does not now contend that the crime laboratory's examination was tainted in any way. He has, therefore, failed to show how any failure on the part of his first attorney to investigate the crime scene resulted in prejudice to his defense.

¶ 44.  Leighton contends that seventy-five calls to counsel, coupled with two letters Leighton wrote directly to the court, evinced his desire for a more thorough investigation. However, nothing in the record indicates the substance of those calls, other than counsel's testimony that some of the calls dealt with an unrelated case and efforts to arrange a polygraph test for Leighton. With regard to the letters to the trial court, one of the letters specifically requested that the court "tell the D.A." to hand over the police reports that his attorney had been asking for. Rather than indicating frustration with inaction by his own counsel, the letters indicate Leighton's frustration with the State's lack of response to the defense's informal discovery requests.

¶ 45.  Because Leighton has failed to show how his counsel's performance was deficient or how he has been prejudiced by any of the claimed deficiencies, we

conclude that Leighton was not denied effective assistance of counsel.

IV.  EXCLUSION OF TESTIMONY

¶ 46.  Leighton contends that the trial court erroneously exercised its discretion by excluding testimony from Hamm's attorney, James McLaughlin, relating an out-of-court conversation he had with a Sawyer County Sheriff's Department investigator regarding the possibility that the shooter was left-handed. A trial court's decision to admit or exclude evidence is a discretionary determination and will not be upset on appeal if it has "a reasonable basis" and was made "in accordance with accepted legal standards and in accordance with the facts of record." *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983).

¶ 47.  Evidence is not admissible unless it is relevant. *See* WIS. STAT. § 904.02. Relevant evidence is defined as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." WIS. STAT. § 904.03. When the admissibility of proffered evidence is challenged, the burden is on the proponent of the evidence to show why it is admissible. *See State v. Jenkins*, 168 Wis. 2d 175, 187–88, 483 N.W.2d 262 (Ct. App. 1992).

¶ 48.  Leighton sought to introduce testimony by McLaughlin relating a conversation with deputy

Timothy Ziegle in which Ziegle told McLaughlin that "it appeared that the shooter was left-handed." Hamm testified that he is left-handed. Leighton argues that because his left hand is crippled and deformed, evidence of a left-handed shooter would prove that Hamm was the actual shooter. The trial court determined:

> [T]here is no scientific evidence that anyone can even determine that [the shooter was left-handed] and I . . . think any theory that an investigator has as to what happens in a case or how they're investigating it or what they are looking at and all possibilities . . . I think that's going to confuse the jury. I think it's really irrelevant.

We agree with the trial court that the proffered testimony amounted to nothing more than pure speculation. Ziegle, by his own admission, is not an expert.

■

¶ 49. On cross-examination, the following exchange occurred:

> [DEFENSE COUNSEL]: Do you recall a time when Mr. Hamm was with his attorney and you were standing out here or out on the corner of the Courthouse by the street . . . where you told him that you believed that the person who shot Mr. Clark was left-handed?
>
> [ZIEGLE]: Not in those words. I told him it was possible. We were doing some experimenting and I believe I told him it was possible the person was left-handed. I would never say that the person was definitely left-handed because I don't have [those] expertise.

In any event, we conclude that Ziegle's own testimony on cross-examination was consistent with McLaugh-

lin's proffered testimony. Because the admission of McLaughlin's testimony would have resulted in the needless presentation of cumulative evidence, *see* WIS. STAT. § 904.03, we conclude that the trial court properly exercised its discretion by excluding McLaughlin's testimony. *See Stan's Lumber, Inc. v. Fleming,* 196 Wis. 2d 554, 573, 538 N.W.2d 849 (Ct. App. 1995) (we may independently review the record to determine whether additional reasons exist to support the court's exercise of discretion).[12]

## V. THE CONSTITUTIONALITY OF WIS. STAT. § 973.014(1)

¶ 50. Leighton contends that WIS. STAT. § 973.014(1), which permits a trial court to establish parole eligibility dates for life sentences, violates the separation of powers doctrine and the constitutional guarantees of due process. Our supreme court has already rejected these constitutional challenges to § 973.014(1), *see State v. Borrell,* 167 Wis. 2d 749, 771, 482 N.W.2d 883 (1992), and we do not address them further.

## VI. LEIGHTON'S PAROLE ELIGIBILITY DATE

¶ 51. Leighton argues that the trial court erroneously exercised its discretion by establishing his particular parole eligibility date. We disagree. A sentencing court sets the parole eligibility date using the same discretionary balancing of factors that governs the imposition of a prison sentence. *See id.* at 764. In

---

[12] Because we conclude that McLaughlin's testimony would have been cumulative, we need not address Leighton's various arguments for the admissibility of McLaughlin's testimony. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (only dispositive issues need be addressed).

reviewing a parole eligibility date, this court follows the same standard of appellate review applicable to sentences, including the presumption that the sentencing court acted reasonably. *See id.* at 781–82.

¶ 52.  The primary factors to be considered in imposing sentence are the gravity of the offense, the character and rehabilitative needs of the defendant, and the protection of the public. *See State v. Sarabia,* 118 Wis. 2d 655, 673, 348 N.W.2d 527 (1984). A trial court may also consider the defendant's criminal record; history of undesirable behavior patterns; personality and social traits; degree of culpability; demeanor at trial; remorse, repentance and cooperativeness; age, educational background and employment record; the results of a presentence investigation; the nature of the crime; the need for close rehabilitative control; and the rights of the public. *See State v. Curbello-Rodriguez,* 119 Wis. 2d 414, 433, 351 N.W.2d 758 (Ct. App. 1984). The weight afforded to each of the relevant factors is particularly within the wide discretion of the trial court. *See id.* at 434. To permit meaningful review, however, the trial court "must articulate the basis for the sentence imposed on the facts of the record." *State v. Echols,* 175 Wis. 2d 653, 682, 499 N.W.2d 631 (1993). Nevertheless, if a sentencing court fails to specifically set forth the reasons for the sentence imposed, this court is "obliged to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained." *McCleary v. State,* 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971).

¶ 53.  Here, it is undisputed that the sentencing court considered the gravity of the offense, the charac-

ter and rehabilitative needs of the defendant, and the protection of the public in determining Leighton's sentence. *See Sarabia*, 118 Wis. 2d at 673. Leighton nevertheless intimates that the sentencing court must again specifically refer to these factors in setting the parole eligibility date. We disagree. As our supreme court recognized, "the parole eligibility date determination is an integral part of the sentencing decision." *Borrell*, 167 Wis. 2d at 781. Because the sentencing court sets the parole eligibility date using the same discretionary balancing of factors that govern the imposition of a prison sentence, we agree with the State that it would be superfluous to require a court to separately articulate these factors, first for sentencing and then again for establishing the parole eligibility date. We conclude that the sentencing court properly exercised its discretion when, in light of its consideration of the relevant factors, it imposed sentence and established Leighton's parole eligibility date.

## VII. RESTITUTION

¶ 54. Leighton contends that the trial court erred by fixing the amount of restitution. As part of Leighton's sentence, the trial court ordered him to pay $27,146.85 restitution for property damage to the Clark residence. Leighton argues that because no proof of the amount of damages was offered at either the sentencing hearing or in the presentence investigation report, the trial court erred by fixing the restitution amount. Because Leighton does not dispute that the sentencing court had authority to order restitution in the first instance but, rather, disputes the amount of restitution, we review the restitution order's terms for erroneous exercise of discretion. *See State v. Holmgren*, 229 Wis. 2d 358, 366, 599 N.W.2d 876 (Ct. App. 1999).

¶ 55. WISCONSIN STAT. § 973.20, governing resti-
tution in criminal cases, "provides that a trial court
'shall order the defendant to make full or partial resti-
tution under this section to any victim of a crime,' when
imposing a sentence or probation for any crime." *State
v. Hopkins*, 196 Wis. 2d 36, 42, 538 N.W.2d 543 (Ct.
App. 1995). In *Hopkins*, the presentence investigation
report indicated certain restitution amounts. *See id.* at
41. At sentencing, neither the State nor the defendant
mentioned restitution; however, when the trial court
imposed its sentence, it also ordered restitution consis-
tent with the amounts noted in the presentence report.
*See id.* at 43–44. The defendant did not object to the
restitution, and the trial court entered the judgment of
conviction. *See id.* It was not until postconviction
motions that the defendant sought to vacate the resti-
tution order. *See id.* The *Hopkins* court recognized:

> [I]n the absence of any objection to amounts claimed
> on a court-ordered restitution summary accompa-
> nying a presentence investigation, where a
> defendant has been given notice of the contents of
> that report and summary, the trial court is entitled
> to proceed on the understanding that the claimed
> amount is not in dispute, and so order restitution
> under [§ ] 973.20(13) . . . .

*Id.* at 42 (quoting *State v. Szarkowitz*, 157 Wis. 2d 740,
749, 460 N.W.2d 819 (Ct. App. 1990)).[13] Because Hop-

---

[13] WISCONSIN STAT. § 973.20(13)(c) provides in relevant part:

The court, before imposing sentence or ordering probation,
shall inquire of the district attorney regarding the amount of resti-
tution, if any, that the victim claims. The court shall give the
defendant the opportunity to stipulate to the restitution claimed by
the victim and to present evidence and arguments on the factors
specified in par. (a). *If the defendant stipulates to the restitution
claimed by the victim or if any restitution dispute can be fairly*

kins received notice via the presentence report and further, failed to contest restitution at sentencing, this court determined that "[h]is failure to contest the issue at sentencing constituted a 'constructive' stipulation to the restitution order." *Id.* at 44.

■■

¶ 56. Here, Leighton first contested restitution in postconviction proceedings. Although the presentence investigation report did not specify an amount, it noted that a "substantial amount of restitution is expected." At the sentencing hearing, the State specified the restitution amounts requested, including $27,146 for the property damage to Clark's residence. In his argument at sentencing, Leighton never objected to this restitution amount, never requested a restitution hearing under WIS. STAT. § 973.20(13), and never objected when the court ordered restitution in the amount requested. Although Leighton did not receive notice of the specific restitution amount via the presentence report, he was on notice that a substantial amount of restitution was expected. He does not dispute that he failed to contest the restitution amount at sentencing. Accordingly, we conclude that Leighton constructively stipulated to the restitution order. *See id.* The trial court did not, therefore, err in setting the restitution amount.

---

heard at the sentencing proceeding, the court shall determine the amount of restitution before imposing sentence or ordering probation. (Emphasis added.)

In *State v. Szarkowitz*, 157 Wis. 2d 740, 749, 460 N.W.2d 819 (Ct. App. 1990), this court held that "[t]he use of the word 'stipulate' in [§ ] 973.20(13)(c) does not imply a requirement of a formal written stipulation, signed by the defendant, as to the amount of restitution claimed."

*By the Court.*—Judgment and order affirmed.