PER CURIAM.
¶1 Eric D. Conner, pro se, appeals a judgment convicting him after a jury trial of one count of second-degree sexual assault of one child and three counts of third-degree sexual assault of another child. He also appeals the order denying his motion for postconviction relief. We affirm both.
¶2 Sisters SMM and SPM, ages fourteen and sixteen, respectively, alleged that Conner, their mother's boyfriend, had sexual contact and forcible penis-to-vagina intercourse with them on different days over a short period of time. The State charged him with five counts of sexual assault: count one, second-degree sexual assault of SMM, and counts two through five, third-degree sexual assault of SPM, all as a repeat offender.
¶3 Conner's defense theory was that the girls fabricated the allegations. Defense counsel, Attorney Jeffrey Brandt, argued that the details of girls' claims were simply implausible. During his testimony, Conner added that the girls lied to buoy up a scheme their mother concocted to extort $ 5,000 from him. The jury found Conner guilty of the first four counts but acquitted him of count five.[1]
¶4 Postconviction, Conner moved for a new trial on grounds that Brandt was ineffective. The girls had testified that they talked to school counselors in the months after the October 2007 assaults. Conner argued that Brandt failed to obtain records of that counseling; to introduce evidence that SMM later told her mother that Conner had fondled her breast earlier on the day of the charged assault; and to investigate whether a medication-the name or nature of which he was unaware-SMM took the day of her alleged rape possibly "causes perception issues such as hallucinations."[2] He contended the counseling records would have shown that the girls' three-year delay in making an official report due to their claimed fear of him was baseless as they knew he was incarcerated since March 2008 for an unrelated felony and that, if he had fondled SMM's breast that same day, she would have been apprehensive when he sat on the couch, despite testifying at the first trial that she was not, thus undercutting the credibility of her rape claim. The postconviction motion did not mention SPM's self-reported mental-health history of bipolar disorder and hallucinations that she raised in the victim-impact statement she prepared in advance of the first trial.
¶5 At the Machner[3] hearing, Brandt testified that he decided not to introduce evidence of SPM's mental health, as he thought focusing on the implausibility of the sexual assaults happening in the time frames and physical locations SMM and SPM described was a better defense strategy. He also said he did not think the school counseling records would have been useful to Conner's defense or that the threshold burden to get an in-camera inspection of them could have been met. Brandt was not asked why he did not elicit testimony from SMM at trial about Conner fondling her breast.
¶6 Conner's appellate attorney later withdrew the postconviction motion and filed a no-merit notice of appeal, but soon after moved to dismiss the appeal. This court granted the motion. In a second postconviction motion, Conner claimed Brandt ineffectively failed to impeach SPM at trial with evidence about mental health issues, especially her claimed hallucinations. A month later, appellate counsel moved to withdraw from representing Conner, explaining that he and Conner could not agree on which issues had arguable merit. Conner told the court he wanted to proceed pro se. The court granted counsel's motion.
¶7 Conner filed a pro se motion for a new trial. He argued that Brandt ineffectively failed to introduce evidence of SPM's mental health and of SMM's breast-fondling claim, and to move to strike a biased juror. The court ultimately denied the motion,[4] concluding that trial counsel's chosen defense strategies were reasonable and that the juror-bias claim failed because that person did not end up serving on the jury. Conner appeals.
¶8 To prevail on an ineffective assistance claim, the defendant must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984). Deficient performance is proved if the defendant shows that " 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' " State v. Johnson , 153 Wis. 2d 121, 127, 449 N.W.2d 845 (citing Strickland , 466 U.S. at 687 ). The proper measure is reasonableness under prevailing professional norms. Strickland , 466 U.S. at 688. Matters of reasonably sound strategy, without the benefit of hindsight, are "virtually unchallengeable" and do not constitute ineffective assistance. See id. at 690-91.
¶9 Prejudice is proved if the defendant establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland , 466 U.S. at 694. Showing some conceivable effect on the outcome is not enough. State v. Erickson , 227 Wis. 2d 758, 773, 596 N.W.2d 749 (1999). We review counsel's performance and prejudice as mixed questions of law and fact. Johnson , 153 Wis. 2d at 127. If a defendant's claim fails on either component, we need not address the other. See Strickland , 466 U.S. at 697.
¶10 Conner faults Brandt for not eliciting testimony from SMM that Conner fondled her breast earlier on the day he raped her. Conner technically has forfeited that claimed deficiency as he did not question Brandt about it at the Machner hearing. See State v. Giebel , 198 Wis. 2d 207, 218, 541 N.W.2d 815 (Ct. App. 1995).
¶11 Forfeiture aside, the claim fails on the merits. The jury heard the breast-fondling evidence when Brandt asked SMM's mother on cross-examination, "Do you recall telling the police that [SMM] said that [Conner] had fondled her breast earlier in the day?" She answered, "When [SMM] told me about the rape, she told me what he had done earlier in the day as well." But Conner contends that was not enough. He complains that the jury "deserved to hear elaborate testimony from SMM" herself as to the "who, what, when and where and how" the earlier assault took place.
¶12 We are not persuaded. Brandt reasonably could have thought that SMM's testimony about other sexual contact would have been more harmful than helpful to Conner. As Brandt testified at the Machner hearing, he thought a better strategy was to attack the plausibility of the girls' allegations and the credibility of Conner's cellmate who testified at trial that Conner confessed his guilt to him.[5] Viewed objectively, Brandt's decisions were reasonable and thus not deficient.
¶13 Conner also has not shown prejudice. He contends SMM's testimony would have contradicted her testimony from the first trial that she was not concerned when Conner sat next to her on the couch and the jury thus would have surmised that she lied about the rape because, if the breast-fondling claim was true, SMM "would have known" when he sat next to her "that [he] was going to attempt to sexually assault her."
¶14 We reject that argument. For one thing, it ignores SMM's testimony that she was resting on the couch because of her back injury and that the Percocet made her "drowsy." For another, SMM's mother provided the basic testimony he thinks SMM should have given. The failure to present cumulative evidence does not undermine our confidence in the trial's outcome. See United States v. Jackson , 935 F.2d 832, 845-46 (7th Cir. 1991) (counsel is not ineffective for failing to introduce cumulative evidence).
¶15 Conner also contends Brandt was ineffective for not cross-examining SPM about her mental-health issues. She wrote in her victim-impact statement, which Conner and Brandt discussed before trial, that the assaults "worsened [her] bipolar mental disorder," that she had "always had problems with hallucinations," the frequency of which increased after the rapes, and that, despite talking to "psychologists and counselors specializing in rape victims," she felt unable to fully open up to them. He contends Brandt should have attempted to locate and access any treatment records.
¶16 Brandt testified that he strategically chose to focus on the details of both girls' accounts, saying they were implausible and "def[ied] logic." He focused on the following facts. Besides not objecting when Conner sat on the living room couch where she lay, SMM said her assault occurred on the couch, or on the floor near it, when about five other people were in the house. SPM said she was assaulted twice in the house after the first assault, each allegedly lasting ten to fifteen minutes, when her mother and grandmother could have come home at any moment. Brandt queried why SPM would stay home alone with Conner when she could have accompanied her mother and grandmother on their errands. Brandt also argued that another location SPM described-a sidewalk cluttered with garbage cans and air-conditioning units-offered no room to accomplish a rape and, despite being just outside their house, SPM did not scream, although she knew people were at home. Finally, Brandt said "[t]he physics" of the last assault "disturb[ed]" him: SPM alleged that Conner pulled her to the ground, took off her pants, then picked her up, held her in the air with her feet off the ground, and had intercourse with her in that position for ten or fifteen minutes.
¶17 Trial counsel may select a particular strategy from the available alternatives. Even if hindsight suggests that another defense might have been effective, the strategic decision employed will be upheld as long as it is founded on a rational assessment of the facts and the law. State v. Hubanks , 173 Wis. 2d 1, 28, 496 N.W.2d 96 (Ct. App. 1992). Brandt reasonably could have thought that a hallucination defense would have harmed Conner, as SPM likely would have testified that her hallucinations worsened after the sexual assaults, giving credence to her accusations. Further, a hallucination defense would not have explained either SMM's accusation or Conner's confession to his cellmate.
¶18 Furthermore, "a defendant who alleges a failure to investigate on the part of his or her counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the case." State v. Leighton , 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126. But a patient's mental-health medical records are privileged. See WIS. STAT. § 905.04(2) (2017-18).[6] To get an in-camera review of such records, a defendant must set forth "a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and is not merely cumulative to other evidence available to the defendant." State v. Green , 2002 WI 68, ¶34, 253 Wis. 2d 356, 646 N.W.2d 298. A defendant must "clearly articulate how the information sought corresponds to his or her theory of defense." Id. , ¶35.
¶19 Conner neither identifies any specific counselor, therapist, or other treatment professional SPM might have seen, nor does he specifically allege what information would have been revealed. Rather, he said he wanted her records "to see if there was anything that was usable" for trial, as he and Brandt "both didn't know what was in them so to ascertain [sic] them was the only way to really kind of find out." He argues that Brandt's failure to obtain the records left him "unable to discover and ascertain what those disorders/hallucinations are, the severity of the [af]flictions, and how they may impact SPM's veracity or perception of what might or might not have occurred." This is little more than a fishing expedition hoping something might be found. Speculation is insufficient to satisfy Strickland 's prejudice prong. See Erickson , 227 Wis. 2d at 774.
¶20 Whether Conner thinks Brandt should have selected the mental-health defense over the implausibility defense or pursued both, neither argument proves ineffectiveness. He does not "clearly articulate" how SPM's mental-health records corresponded to the reasonable theory of defense that the girls' allegations were implausible. And Brandt testified that presenting multiple defenses "makes it very difficult for a jury," so he chose the one he thought offered Conner his "best opportunity" to inject "a high likelihood of a reasonable doubt." "We will not 'second-guess[ ] the trial counsel's considered selection of trial tactics or the exercise of a professional judgment in the face of alternatives that have been weighed by trial counsel.' " State v. Hunt , 2014 WI 102, ¶55, 360 Wis. 2d 576, 851 N.W.2d 434 (citation omitted). Brandt's choice was objectively reasonable; his choosing it does not undermine our confidence in the outcome.
¶21 Finally, Conner contends Brandt ineffectively failed to move to strike a biased juror. He first alleged juror bias in his pro se postconviction motion for a new trial. Regardless of whether he forfeited that claim by not questioning Brandt about it at the Machner hearing, as the State argues, see Giebel , 198 Wis. 2d at 218, the claim has no merit.
¶22 After the pool of prospective jurors was ushered into the courtroom, the bailiff called off twenty-three names, which appear in the transcript, and the named persons were seated. During voir dire, Brandt said, "My client Eric Conner is African American. I know we don't like to admit bias or prejudice if we have it, but this is very, very important. Is there anyone who has a bias or a prejudice against African Americans? Or Eric Conner?" Someone identified only as "unknown juror" asked, "Could I speak up?" The court said, "Not at this point, sir." At the end of voir dire, "unknown juror" said, "Can I speak up now?" Again the court said, "No." Both attorneys then confirmed that the jury pool reflected the one they had selected.
¶23 The court found after a hearing on Conner's motion that there was no evidence that "unknown juror" actually served on the jury. This finding is not clearly erroneous. As the court explained:
There may have been 40 [prospective jurors] or so that were brought in initially. And then of those 40 there are specific folks that are called forward and seated in the jury box .... If the Court does strike somebody for cause during the process, then one of the people in the back of the courtroom is then called forward to replace them. I instructed ... the entire panel before the process starts that those in the back of the courtroom should listen to the questions that are asked and that if they are called upon to replace one of the named prospective jurors then I will ask if they've heard the questions and if they would have responded in the affirmative to any of those but I ask those folks not to respond during the process because our questioning is directed primarily at the people who have been called forward. So the identification of those people in the back who are in the large jury panel has not been identified to the Court and that's why it would be reflected as unknown juror. At that time when they're seated in a particular seat, then we have the identification of them and then when they indicate in the affirmative or wish to say something, then we allow them to say what they want and address the particular juror accordingly. But those in the back, if they do raise their hand-and occasionally some of them do-my response is that that wouldn't be the time for them to address it at that point. So in this case, the situation of the unknown juror means that it was somebody that would have been in the back gallery area that wasn't called forward, and if that person would have been called forward later on then there would have been the questioning and the opportunity for them to state what their concern was or what their issue was so that they would have answered in the affirmative.
¶24 A claim that a jury is partial must focus not on the jurors who were removed but on the jury that actually sat in the case. State v. Traylor , 170 Wis. 2d 393, 400, 489 N.W.2d 626 (Ct. App. 1992). When a seated juror spoke during voir dire, the transcript identifies him or her by name. The person whose impartiality troubles Conner was identified only as "unknown juror." We are satisfied that the unidentified prospective juror who asked to speak was not selected to serve on the jury.
¶25 Accordingly, we need not reach Conner's further arguments about subjective and objective juror bias and that the trial court erroneously exercised its discretion in failing to question "unknown juror" individually to ensure that the jury was not tainted by racial bias.
¶26 For all of the above reasons, we reject Conner's contention that the trial court erred in denying his motion for postconviction relief.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

This was Conner's second jury trial. His first ended in a mistrial due to a late-recognized conflict of interest.

On the day of the charged assault, SMM was prescribed Percocet for a back injury she suffered the day before.

See State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

The trial court first denied the motion as untimely. This court summarily reversed that order and extended the trial court's time to decide Conner's postconviction motion.

The cellmate testified that Conner told him he had had sex with the sisters, giving details similar to those alleged in the complaint, and that the girls and their mother lived in a one-bedroom apartment, which is factually true but did not appear in the complaint. The cellmate also recalled a shortened version of SMM's actual first name. The cellmate reported Conner's confession to security. The cellmate said Conner showed him a copy of the complaint after he reported the matter to security.
Trial counsel focused on the facts that the cellmates did not get along and that the cellmate could be confused about the timing of seeing the complaint at some point because his memory was affected by a stroke he suffered before the conversation with Conner.

All references to the Wisconsin Statutes are to the 2017-18 version unless noted.