COURT OF APPEALS
DECISION
DATED AND FILED

September 23, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP852**

Cir. Ct. No. **2014CF1022**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

JAMEIL A. GARRETT,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Kenosha County: CHAD G. KERKMAN, Judge. *Reversed and cause remanded with directions*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State appeals an order granting Jameil Garrett a new trial after two postconviction motions alleging ineffective assistance of trial and postconviction counsel for not calling alibi witnesses. The State argues that Garrett did not sufficiently prove that he was prejudiced. We agree and reverse the order and remand with directions that Garrett's conviction be reinstated.

¶2 After a violent incident on September 12, 2011, Garrett was charged with aggravated battery with intent to cause great bodily harm, intimidation of a victim with use or attempted use of force, criminal trespass to a dwelling, and disorderly conduct. M.S.—the victim, with whom Garrett has a child—Angelica Correa, Herman Jones, and Jones' brother Gino were at M.S.'s apartment that evening. According to the complaint, Garrett showed up at some point, entered M.S.'s bedroom, saw Jones and M.S. sleeping in her bed, and attacked M.S., beating her to the point of unconsciousness, leaving her with a swollen face, black eyes, and a perforated eardrum. He later threatened her that, if he was jailed, she "better be careful on the streets" as his family would come after her.

¶3 At trial, M.S. testified that she was asleep when Garrett began attacking her but that she knew it was him, as she recognized his voice. Correa testified that she had gone into M.S.'s bedroom to get something and saw Garrett—who had not been in the apartment earlier—enter; that she dropped her phone and when she switched on a light to find it, she saw Garrett pull M.S. to the floor and deliver "full-force," closed-fist punches to M.S.'s face; that she "jumped on top of [M.S.] to cover her"; and that she knew it was Garrett because she had known him for several months. Victim-witness coordinator Brian Stuht testified that, while he was meeting with M.S., Garrett phoned her. M.S. asked Garrett why he had hurt her and, as her phone was on speaker, he heard Garrett say she

2

should not have had another man in her bedroom. Two police officers and a doctor and a physician's assistant testified about the extent of M.S.'s injuries.

¶4    Garrett's theory of defense was misidentification, arguing that he was not the intruder and that Correa had testified that the room was dark. Jones testified that he did not see the attack and never identified Garrett as the attacker.

¶5    The jury convicted Garrett on all four counts.

¶6    Garrett filed a postconviction motion under WIS. STAT. §§ 809.30 and 974.02 (2017-18)[1] seeking a new trial. He claimed that trial counsel Michael Barth, his fifth attorney, provided ineffective assistance through deficient trial preparation, particularly by not investigating or calling alibi witnesses. Garrett attached to his motion a six-name witness list filed by his second attorney and asserted that three of them would have testified that he was at a birthday party in Chicago the night M.S. was assaulted.

¶7    Barth was appointed in September 2014. At the ensuing *Machner*[2] hearing, Barth testified that he received the case file from Garrett's fourth attorney; that, despite what he believed was a thorough review of the file, he did not see the notice of alibi filed by the second attorney; and in their pretrial conversations, he and Garrett did not discuss an alibi offense. Garrett testified that he told his first four attorneys about his alibi witnesses and mentioned them to Barth on the morning of the first day of trial, December 15, 2014. The State made an offer of proof that Garrett's third attorney, Aileen Henry, would testify that she

---

[1]   All references to the Wisconsin Statutes are to the 2017-18 version unless noted.

[2]   *See* ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

investigated Garrett's proposed alibi witnesses but did not find them credible so did not plan to call them at trial. As Garrett refused to waive his attorney-client privilege, she did not testify at the hearing.

¶8 The court denied the motion due to the State's offer of proof and that Garrett produced no alibi witnesses at the hearing. It said that even if Barth's failure to investigate alibi witnesses constituted deficient performance, it could not find that there was a reasonable probability that the outcome of the trial would have been different. It also found that to the extent Garrett's testimony diverged from Barth's, Barth's was the more credible.

¶9 Garrett appealed the denial of his motion. This court affirmed, reasoning that Garrett "offer[ed] no showing of prejudice, i.e., any information that would have been helpful to his cause had [Barth] performed a more diligent 'investigation and preparation.'" *State v. Garrett*, No. 2017AP652-CR, unpublished op. and order at 2-3 (WI App. Mar. 21, 2018).

¶10 Garrett then filed a postconviction motion under WIS. STAT. § 974.06, again seeking a new trial. He renewed his ineffectiveness claim against Barth and also argued that Attorney Kerri Cleghorn, his counsel during his first *Machner* hearing, likewise was ineffective for not presenting alibi witnesses.

¶11 A second *Machner* hearing was held. Two of Garrett's proposed alibi witnesses testified. His cousin, Willie Pitts, testified that Garrett was at the birthday party on September 12, 2011. Martina Bell testified that she and her children lived with Pitts in North Chicago and that Garrett was there the entire night, staying until morning. Garrett testified that he was in North Chicago on September 12 with Pitts, Bell, and other family members.

¶12    Cleghorn testified that she argued in the postconviction motion and at the first hearing that Barth had provided ineffective assistance by not properly investigating the case before trial and not talking to alibi witnesses; that she left voice mail messages for the alibi witnesses, but none responded; that she may have had the alibi witnesses' mailing addresses but did not mail them any letters; that it is difficult to rely on witnesses who are not forthcoming; and that at Garrett's revocation hearing the administrative law judge found the alibi witnesses not credible.[3]    She testified that she thus made a strategic decision not to focus on the alibi witnesses.

¶13    Kenosha Police Department Detective Kenneth Duffy testified that he received a request in June 2012 to investigate the six alibi witnesses; had phone numbers for most of the alibi witnesses but just one address; that only one, Michael Boyd, whom Garrett had identified as being at the Pitts birthday party, responded; that Boyd said he did not remember seeing Garrett on September 12, 2011; that Boyd said he lived down the street from Pitts but declined to give out Pitts's address.

¶14    Attorney Aileen Henry testified that she found the alibi witness list in the file from a previous attorney; that the investigator she engaged to contact those witnesses mailed them letters seeking contact; that most of the witnesses refused to meet with the investigator; that the investigator contacted Garrett's brother who agreed to meet with Henry to help her contact other alibi witnesses; that he was unable to obtain their cooperation; and that the only witness Henry was able to talk to was Bell, who said she did not want to be involved in the case.

---

[3]  Garrett was on probation at the time of M.S.'s attack.

¶15    The circuit court found Cleghorn's performance deficient in regard to investigating the alibi witnesses because, while she tried to contact them by phone, she had mailing addresses but "didn't bother to use them."  It also found Barth deficient because, while he apparently did not learn of Garrett's proposed alibi witnesses until the morning of trial, he failed to seek a continuance to locate them.  The court made no credibility finding as to the alibi witnesses' testimony.

¶16    Though the court found that both Barth and Cleghorn rendered deficient performance, it said, "I don't know" if the deficient performances affected the outcome of the case.  Nonetheless, it granted Garrett's motion, vacated his convictions, and ordered a new trial.  The State appeals.

¶17    A defendant claiming ineffective assistance of counsel must prove both that the lawyer's representation was deficient and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The deficiency and prejudice prongs may be addressed in either order. *Id.* at 697.  Thus, a court may decide ineffective assistance claims based on prejudice without analyzing whether counsel's performance was deficient. *Id.*

¶18    To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  It is not enough that a defendant shows the error conceivably could have influenced the outcome. *State v. Pitsch*, 124 Wis. 2d 628, 641, 369 N.W.2d 711 (1985).  He or she "must affirmatively prove prejudice." *Id.*

¶19    Garrett argues that the trial court found that not only were trial and postconviction counsel both ineffective,[4] but that there was a substantial probability of a different outcome had they made even minimal efforts to better investigate. Accepting the circuit court's conclusion that Barth's and Cleghorn's investigation of the alibi witnesses was deficient, we turn to the prejudice prong.

¶20    We disagree with Garrett. First, the court did not find, contrary to Garrett's claim, that either counsel's performance was prejudicial. In the first *Machner* hearing, the court held that it could not find a reasonable probability that the outcome of the trial would have been different but for Barth's alleged deficient performance. This court affirmed that ruling.

¶21    In the second *Machner* hearing, the one on review here, the court found that both Barth and Cleghorn deficiently represented Garrett. Then asking whether their deficient performance affected the outcome of the case, it answered its own question: "I don't know. But we're going to find out because I am granting the [new trial] motion and vacating the convictions."

¶22    Second, as we said, a defendant must affirmatively prove prejudice. *Pitsch*, 124 Wis. 2d at 641. The record as a whole demonstrates that Garrett cannot prove prejudice. He has not shown that, even had Barth tried to contact the claimed alibi witnesses and had Cleghorn tried harder to contact them that it would have affected the outcome of the case. M.S. and Correa, both of whom knew Garrett well, identified him with certainty as the assailant. The victim-witness coordinator testified about the phone conversation between M.S. and

---

[4] Garrett conflates "ineffective" with "deficient." Counsel is not ineffective unless both deficiency and prejudice are proved.

Garrett in which, when she asked why he hurt her, Garrett said she should not have been in bed with another man. Further, had counsel more thoroughly investigated, Garrett did not prove that the alibi witnesses even would have testified at trial or at the first postconviction hearing. Indeed, Attorneys Henry and Cleghorn and Detective Duffy either were unable to make contact with those witnesses or found them unresponsive or uncooperative, even with the assistance of Garrett's brother. Garrett also did not allege with specificity what their investigations would have revealed and how they would have altered the outcome of the case. *See State v. Leighton*, 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126.

¶23 The court's "I don't know" underscores that Garrett did not satisfy his burden of affirmatively proving that it is reasonably probable a more diligent investigation would have resulted in a different outcome. We conclude that the court erred in not holding him to his burden and in granting him a new trial. We therefore reverse the order and remand with instructions to reinstate Garrett's conviction.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.