COURT OF APPEALS
DECISION
DATED AND FILED

February 27, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2014**

STATE OF WISCONSIN

Cir. Ct. No. 2020FA70

IN COURT OF APPEALS
DISTRICT IV

IN RE THE MARRIAGE OF:

JESSICA LYN VOLZ,

    PETITIONER-RESPONDENT,

  V.

MICHAEL JOHN VOLZ,

    RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Adams County: DANIEL G. WOOD, Judge. *Affirmed.*

Before Kloppenburg, P.J., Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Michael Volz appeals a divorce judgment resolving contested issues between Michael and Jessica Volz.[1]  Michael argues that the circuit court erroneously exercised its discretion by:   (1) denying Michael's request to continue the divorce trial; (2) denying maintenance to Michael; and (3) valuing and dividing the parties' marital property.   For the reasons explained in this opinion, we reject Michael's arguments on each of these points.   We affirm.

Background

¶2     Jessica filed this divorce action in November 2020.  In April 2023, after extensive pretrial litigation—during which Michael retained and then fired three different attorneys, and retained a fourth attorney—the divorce trial was scheduled to begin on August 30, 2023.

¶3     On July 19, 2023, Michael notified the circuit court that he would no longer be represented by his fourth attorney.  Michael stated that a new law firm was willing to take his case, but that the firm requested a continuance of the scheduled trial to review the case.  On July 20, 2023, the court denied Michael's request for a continuance.  The court explained that the trial in this "dated" case had been on the court's "very busy calendar" since April 2023, and that "[r]escheduling would require substantial delay and inconvenience."  Also on July 20, 2023, Michael's fourth attorney moved to withdraw, explaining that Michael had "made it clear … that he no longer want[ed] [counsel] to represent him" and that "[t]here ha[d] been a complete and total breakdown of the attorney-

---

[1] Because the parties share a surname, we refer to them by their first names for clarity.

client relationship." On July 21, 2023, the court issued an order granting Michael's fourth attorney's motion to withdraw.

¶4  On August 3, 2023, Michael moved to continue the trial on the basis that he did not have counsel. The circuit court denied the request for the same reasons as it denied Michael's prior request for a continuance.

¶5  On August 28, 2023, Michael filed another motion to continue the trial. Michael asserted that he was "not medically able to attend the trial," and he attached a letter from a clinical psychologist opining that Michael was experiencing "increased suicidal ideation" over the past two weeks. The psychologist also opined that "[o]ne of the major current stressors for [Michael was] that he [did] not have legal representation in his divorce proceeding." The circuit court denied the motion, noting that the trial had been scheduled for more than four months.

¶6  On August 30, 2023, the first day of the scheduled trial, Michael filed another motion to continue the trial stating that he was "not medically able to attend the trial." Michael attached a letter from a clinical psychologist stating that Michael had been placed on a "voluntary mental health hold." Jessica appeared for trial with counsel, and Michael did not appear.

¶7  At the outset of trial, the circuit court addressed its decision to deny Michael's requests to continue the trial. The court explained that it denied the requests to continue the trial for the following reasons: (1) the case was already almost three years old; (2) Michael had previously retained four different attorneys, all of whom withdrew due to a breakdown in communication; (3) Michael was on notice that trial was scheduled to begin that day, and his "last minute desires to postpone the trial [came] with a backdrop of obstructionism on

his part," including a prior finding of contempt by the court for failing to allow Jessica to exercise her physical placement with their children as ordered by the court; (4) Michael's current mental health issues were reportedly based on his lack of legal counsel, which the court found was "the result of [Michael's] own choices including termination of counsel so close to trial"; (5) rescheduling the trial would put the case into the next year, resulting in it being more than three years old, and would be a waste of the court's scarce resources, including its time; and (6) adjourning trial would be unfair to Jessica, because it would be a waste of Jessica's time and resources preparing for trial and "would delay her ability to timely end what is unquestionably a toxic marriage." After addressing its reasons for denying Michael's requests for continuances, the court held the trial without Michael being present.

¶8      After taking evidence during the trial, the circuit court made the following factual findings. The parties' marriage was "longer term."[2] At the time of the divorce, Jessica was forty-two years old and employed as a nurse, with a most recent annual salary of about $112,000. Michael was forty-three years old and was unemployed. Michael had a "substantial income" during the marriage, earning "substantially more" than Jessica, but he had left his employment during the divorce proceedings for unknown reasons. Michael received $1,800 a month in military disability benefits, which he had also received during his employment. Michael had the capacity to earn more than the $1,800 he received in disability benefits, but his actual current earning capacity was unknown because Michael

---

[2] The parties were married in January 2003, and Jessica filed for divorce in November 2020.

4

presented no evidence at trial.[3]   Michael had a retirement account valued at $164,172 and a deferred compensation account, which Michael depleted during the divorce action, valued at $118,800.[4]  Jessica had retirement accounts valued at $44,301.33 and $34,366.63.   The court found credible Jessica's undisputed testimony concerning the value of the parties' personal property, and that certain items of property remained in Michael's possession.  The court also found credible Jessica's undisputed testimony about the parties' marital debts, and denied Michael's prior claims of marital debt that were not properly documented by the deadline previously set by the court.

¶9     Based on those facts, the circuit court made the following decisions concerning property division and maintenance.   Michael was awarded his retirement account worth $164,172 and Jessica was awarded her retirement accounts worth $78,667.96.  The values of those assets were not included in the court's "Property Division Spreadsheet," resulting in a division of marital property in Michael's favor.  The value of Michael's deferred compensation account, which he depleted during the divorce action, was $118,800 minus a 20% tax discount,

---

[3] In pretrial proceedings, Jessica asserted that Michael's prior income had been more than $120,000.   Jessica asserts on appeal that Michael had historical annual earnings of approximately $120,000, and Michael does not dispute that point in his reply brief.  Rather, Michael asserts that, "[w]hile [Michael's] historical high earnings were referenced by the Court, there was not a finding of Michael's [current] income, nor his income capability at the time of trial."  We therefore take Michael to concede that he had a *prior* income of $120,000. *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (lack of response in reply brief may be taken as a concession).

[4] The circuit court was entitled to consider the value of Michael's deferred compensation account as part of the marital estate subject to division.  *See* WIS. STAT. § 767.63 (2023-24) (providing that an asset that would have been part of the marital estate but "that was transferred for inadequate consideration, wasted, given away, or otherwise unaccounted for by one of the parties within one year prior to the filing of the petition … is rebuttably presumed to be property subject to division").  All subsequent references to the Wisconsin Statutes are to the 2023-24 version unless otherwise indicated.

and was included in the marital estate, subject to division and factored into the equalization payment the court determined Michael owed to Jessica. The court included as marital debt $18,000 of Jessica's outstanding student loan amount of $24,000, assigning the remaining $6,000 to Jessica individually. The court declined to award maintenance to Michael after considering Michael's substantial income during the marriage and that there were no facts at trial to establish why Michael left his employment after the commencement of the divorce action or to establish that there were any limitations on his employability. The court also explained that it had already accounted for the current disparity in the parties' incomes by deviating from an equal property division in Michael's favor and awarding each party their individual retirement accounts, of which Michael's account was valued substantially higher than Jessica's retirement account. Michael appeals.

*Standard of Review*

¶10 The decision whether to grant or deny a motion to continue a trial, and decisions concerning maintenance and property division in a divorce case, are committed to the circuit court's discretion. *State v. Leighton*, 2000 WI App 156, ¶27, 237 Wis. 2d 709, 616 N.W.2d 126 (continuance); *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789 (maintenance and property division). "We will affirm a circuit court's exercise of discretion if the court applie[d] the correct standard of law and, using a demonstrated rational process, reach[ed] a conclusion that a reasonable court could reach." *Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶39, 300 Wis. 2d 1, 728 N.W.2d 693.

*Discussion*

¶11 Michael argues that the circuit court erroneously exercised its discretion by denying his July 19, 2023 request for a continuance of the August 30, 2023 trial date because the court failed to consider the following relevant factors: (1) Michael sought a reasonable continuance rather than a substantial delay; (2) the purpose of the request was to allow Michael to retain his fifth attorney and to allow time for that attorney to prepare for trial; and (3) this was Michael's first request for a continuance of the trial.[5] *See* **Rechsteiner v. Hazelden**, 2008 WI 97, ¶93, 313 Wis. 2d 542, 753 N.W.2d 496 (relevant factors for a court to consider regarding a request to continue trial include "the length of the delay requested"; "whether other continuances had been requested and received"; "the convenience or inconvenience to the parties, witnesses, and the court"; and "whether the delay seems to be for legitimate reasons"). Michael contends that, when the court denied this request, the court made no finding as to whether the request was for a legitimate reason rather than for purposes of delay. Michael also argues that the court should have held a hearing to address his request for a continuance before allowing Michael's fourth attorney to withdraw. Michael fails to show that the court erroneously exercised its discretion.

¶12 Here, Michael made his first request to continue the August 30, 2023 trial on July 19, 2023. Michael indicated to the circuit court in his continuance request that he would no longer be represented by his fourth attorney due to "the

---

[5] Michael asserts in his statement of issues that the circuit court erred by denying Michael's multiple motions for a continuance. However, the only argument he makes in the argument section of his brief on this issue is that the court erred by denying his *first* request for a continuance, which was made in July 2023. Therefore, this is the argument we address.

two recent deposition cancellations." Michael stated that he had found "better representation" but the new attorney would need a "reasonable continuance" to prepare the case. In other words, Michael made the decision to discharge his fourth attorney before requesting, much less receiving, a continuance from the court regarding the scheduled trial date. As the court stated in its July 20 order denying the request, the trial had been set on the court's "very busy" calendar since April 2023, and "[r]escheduling would require substantial delay and inconvenience." Thus, although Michael stated that he was requesting only a "reasonable continuance," the court found that granting the request would result in "substantial delay."[6] The court considered that such a delay would cause inconvenience to the court and the opposing party. A circuit court has "inherent authority to decide, on the specific facts before it, whether the interests of efficiency and fairness will or will not be best served by a continuance or adjournment." *State v. Chvala*, 2003 WI App 257, ¶21, 268 Wis. 2d 451, 673 N.W.2d 401. The court here found that continuing the trial would result in substantial delay and inconvenience, both of which are appropriate and reasonable factors for the court to consider. Accordingly, the court reasonably exercised its discretion in denying Michael's motion for a continuance.

¶13 Moreover, we are not persuaded by Michael's contention that the circuit court was required to make a specific finding that the motion for a continuance was not for a legitimate purpose in order to properly exercise its discretion in denying the motion. Whether a request for a continuance was made

---

[6] At the outset of trial on August 30, 2023, the court explained further that rescheduling trial would have pushed the trial into the following year, at which point the case would have been over three years old.

for a legitimate purpose is just one factor to be balanced among other factors in a court's exercise of discretion in deciding a motion for a continuance. *See Rechsteiner*, 313 Wis. 2d 542, ¶¶93-97. As explained above, the court denied the motion for a continuance based on the length of delay that would be caused by rescheduling the trial and the resulting inconvenience to the opposing party and the court. *See id.*, ¶93 (factors one and three). Michael has not established that the court's decision based on those factors was an erroneous exercise of discretion.

¶14 We are similarly not persuaded by Michael's contention that the circuit court was required to hold a hearing before allowing Michael's fourth attorney to withdraw to properly exercise its discretion on Michael's motion to continue the trial. As set forth above, in his July 19, 2023 letter in which he requested a continuance, Michael indicated that his fourth attorney would no longer be representing him. Therefore, Michael made this decision before asking for a continuance of the trial date. Further, the court denied Michael's request for a continuance on July 20, 2023, before the court issued its July 21, 2023 order permitting Michael's fourth attorney to withdraw. Accordingly, Michael knew before the court allowed his fourth attorney to withdraw that his request for a continuance was denied. That the court did not hold a hearing before granting the motion to withdraw does not alter our analysis, above, that the court properly exercised its discretion to deny Michael's request for a continuance based on the facts before the court.

¶15 Next, Michael argues that the circuit court erroneously exercised its discretion by failing to consider relevant statutory factors in denying maintenance

to Michael.[7]  Specifically, Michael alleges that the court erred in not considering Michael's earning capacity and ability to support himself at the marital standard of living.  *See* WIS. STAT. § 767.56(1c)(c) and (f).[8]  Michael contends that, without determining Michael's earning capacity, the court could not properly apply the

---

[7] In pertinent part, WIS. STAT. § 767.56(1c) states:

> Upon a judgment of … divorce, … the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time … after considering all of the following:
>
> (a) The length of the marriage.
>
> (b) The age and physical and emotional health of the parties.
>
> (c) The division of property made under [WIS. STAT. §] 767.61.
>
> ….
>
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
>
> (f) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.
>
> ….
>
> (j) Such other factors as the court may in each individual case determine to be relevant.

[8] Michael also contends that the circuit court erred by failing to consider the tax consequences of maintenance to the parties.  *See* WIS. STAT. § 767.56(1c)(g).  However, Michael does not argue that the tax consequences to the parties were relevant to whether the court should award him maintenance.  "In making a maintenance decision, the court is not obliged to consider all of the statutory factors, but must consider those factors that are relevant."  ***Brin v. Brin***, 2014 WI App 68, ¶11, 354 Wis. 2d 510, 849 N.W.2d 900.

statutory factors under § 767.56(1c) or apply the support and fairness objectives of a maintenance decision. *See **LaRocque v. LaRocque***, 139 Wis. 2d 23, 31-34, 406 N.W.2d 736 (1987). We conclude that Michael has not established that the court erroneously exercised its discretion by denying maintenance to Michael.

¶16 First, Michael failed to appear for trial, which alone provided a basis for the circuit court to deny Michael's pretrial request for maintenance.[9] *See **Buchanan v. General Cas. Co.***, 191 Wis. 2d 1, 9, 528 N.W.2d 457 (Ct. App. 1995) (providing that a "trial court may dismiss a party's claim for failure to appear at a scheduled trial date in direct contravention of a previous court order"). The court repeatedly denied Michael's request for a continuance of the trial date, and Michael was on notice that the trial would proceed on August 30, 2023. Because he failed to appear at the scheduled trial, the court had a valid basis to dismiss his request for maintenance. *See **Chevron Chem. Co. v. Deloitte & Touche**,* 176 Wis. 2d 935, 945, 501 N.W.2d 15 (1993) (we may affirm a circuit court's decision on other grounds).

¶17 Nonetheless, the circuit court explained its reasons for denying maintenance to Michael as follows: Michael had earned substantially more than Jessica during their marriage and had decided to leave his well-paying job for unknown reasons during the divorce proceedings, and there were no limitations established on Michael's employability; based on his prior earnings, Michael had the capacity to earn more than the $1,800 per month he currently received in military disability payments, even though his exact earning capacity could not be

---

[9] At the final pretrial hearing in April 2023, the court noted that Michael was requesting maintenance, and that maintenance was an issue that would be in dispute at trial.

assessed because of his failure to appear; the court offset the current disparity in the parties' incomes by awarding the parties the value of their own retirement accounts and excluding these values from the court's equal division of the remaining property, which resulted in Michael receiving a more favorable property division award;[10] and the desirability of giving finality to the parties without necessitating further highly contentious court proceedings. Thus, the court explained that it considered the relevant factors under WIS. STAT. § 767.56(1c) and the support and fairness objectives of maintenance. Michael fails to show that the court could not properly exercise its discretion in the absence of a finding (or any evidence) as to Michael's exact earning capacity, especially considering that Michael did not appear at trial to establish his earning capacity. Michael has not established any basis for this court to disturb the circuit court's exercise of discretion.

¶18 Finally, Michael argues that the circuit court erroneously exercised its discretion in its division of marital property. The general rule governing property division is that all assets and debts acquired during the marriage are divisible upon divorce, *see McLaren v. McLaren*, 2003 WI App 125, ¶8, 265 Wis. 2d 529, 665 N.W.2d 405, according to their value as of the date of the divorce, *Schinner v. Schinner*, 143 Wis. 2d 81, 98, 420 N.W.2d 381 (Ct. App.

---

[10] Michael contends that the circuit court erred by considering the unequal property division in its maintenance determination because the court did not consider Michael's claimed debts and Michael disputed the property valuations. However, Michael failed to provide documentation by the court's deadline to support his claims of debt. He also failed to appear at trial to provide any testimony or evidence on those issues. As set forth below, Michael does not explain why the circuit court erred by relying on the undisputed trial testimony on those issues. We decline to considered undeveloped arguments. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address arguments that are undeveloped or lack references to supporting legal authority).

1988). Consequently, under WIS. STAT. § 767.61(3), a circuit court starts with the presumption that marital property is to be divided equally at divorce. A court may deviate from an equal division of marital property after considering relevant statutory factors, including whether a property division award is in lieu of maintenance. *See LeMere*, 262 Wis. 2d 426, ¶¶24-26; *see also* § 767.61(3)(i) (courts can consider a property division award in lieu of maintenance).

¶19 We also review a circuit court's division of marital property for whether the division was "fair and equitable." *Danielson v. Danielson*, 2024 WI App 57, ¶9, 414 Wis. 2d 1, 13 N.W.3d 239 (citation omitted).

¶20 Michael argues that the circuit court erroneously exercised its discretion in its division of the parties' marital property. He contends that the court failed to resolve conflicts between the parties as to the value of Michael's deferred compensation account and how the funds from that account had been used. He also argues that the court erred by accepting Jessica's testimony as to the value of the parties' retirement accounts and personal property, and Michael's possession of their personal property, without further evidence to support that testimony. He contends that the court erred by including a portion of Jessica's student loan as marital debt when Jessica will be the only one to benefit from her degree, and by excluding debts claimed by Michael. He argues that the court erred by considering only one statutory factor in its property division, that is, that no maintenance had been awarded. *See* WIS. STAT. § 767.61(3)(i). He also contends that, because the court did not order maintenance, the court should have awarded him an even greater share of the marital property.

¶21 Michael fails to show that the circuit court erroneously exercised its discretion in its property division award. First, Michael has not explained why the

court was not entitled to rely on the undisputed evidence at trial as to the value of the parties' retirement accounts and debts, and the value and possession of the parties' marital property. Second, the court included a portion of Jessica's student loan debt as marital debt because of her undisputed testimony that the majority of her student loans paid for household living expenses that benefitted both parties. Third, as set forth above, the court was entitled to count the full value of Michael's deferred compensation plan, less a tax discount the court applied, that Michael disposed of during the divorce proceedings as divisible property that Michael had received from the marital estate. Finally, Michael does not develop an argument as to how the statutory factors, applied to the facts before the circuit court, would have supported a more favorable division of the marital property in his favor. In fact, the division of the parties' marital property favored Michael. Accordingly, Michael has provided no basis for this court to disturb the court's exercise of discretion in its property division decision. We affirm.[11]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[11] To the extent Michael raises any other arguments on appeal not specifically addressed in this opinion, we deem those arguments insufficiently developed to warrant a response. *See* *Pettit*, 171 Wis. 2d at 646-47.