# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 24, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2568**

Cir. Ct. No. 1993CF932522A

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

       PLAINTIFF-RESPONDENT,

  V.

ALONZO LEE PEAVY,

       DEFENDANT-APPELLANT.

---

       APPEAL from orders of the circuit court for Milwaukee County: MICHELLE A. HAVAS, Judge. *Affirmed*.

       Before White, C.J., Colón, P.J., and Donald, J.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM.　Alonzo Lee Peavy, pro se, appeals from the order denying his postconviction motion filed pursuant to Wis. Stat. § 974.06 (2023-24),[1] and from the order denying his motion for reconsideration.　Upon review, we affirm.

## BACKGROUND

¶2　Peavy was convicted in 1993 of first-degree intentional homicide and attempted first-degree intentional homicide, both with the use of a dangerous weapon and as a party to a crime, relating to a shooting that occurred at a tavern on North Avenue in Milwaukee.　Peavy and his cousin, Jamal Purifoy, were both charged with killing Tina Terry, the tavern's owner, and attempting to kill Chris,[2] who was working as a bouncer that night.

¶3　Chris testified at Peavy's trial that three men, later identified as Peavy, Purifoy, and a third man, Anthony Johnson, entered the tavern at approximately 2:15 a.m.　Chris told them it was closing time and they should leave.　Chris testified that Peavy then pulled out a gun and shot him in the chest.　Chris started struggling with Peavy and Purifoy, and he was shot a second time, in the groin, by Purifoy.　Chris saw Peavy shoot Tina.　He was then shot two more times, in the wrist and the buttocks.

¶4　Another employee from the tavern also testified.　He identified Peavy as the person who shot Chris during the initial verbal exchange when the

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] We use a pseudonym for this victim, pursuant to Wis. Stat. Rule 809.86.

men came in the bar. The employee further stated that one of the men took money out of the cash register before fleeing the tavern.

¶5 Also testifying for the State was Johnson, the third man who entered the tavern with Peavy and Purifoy. Johnson testified that it was Purifoy who had shot Chris, and that Peavy shot Terry.

¶6 Additionally, one of the investigating detectives testified that the gun used in the shooting was defective. He explained that Chris had told them that during the altercation "there appeared to be something strange or funny going on with the people that were shooting the gun and the handling of this gun as if they had to do something to this gun before each shot." The detective then questioned Peavy about this, who stated that the gun they had used had a defect where after it was fired "you would have to take your hand and manually turn the cylinder to get the next bullet in line before the gun would fire." Peavy said that once the gun was fired, "if you just pull the trigger, the cylinder would not rotate."

¶7 Peavy testified in his own defense. He claimed the altercation started as an argument between Purifoy and Chris. Peavy said that Chris pulled out "something silver" from a pouch, which Peavy believed to be a gun. Peavy said he heard a shot, but he did not know who had shot whom. Peavey admitted he shot Terry after he had taken the gun from Purifoy; he said he heard her behind him and "panicked," thinking his "life was in danger."

¶8 Peavy requested jury instructions for the lesser-included offenses of second-degree intentional homicide and attempted second-degree intentional homicide, based on imperfect self defense. The circuit court denied this request, concluding the evidence did not support giving the lesser-included instructions. The jury convicted Peavy as charged.

¶9 Peavy, by counsel, filed postconviction motions alleging several errors by the circuit court. Specifically, he argued that the court erred by not providing jury instructions for the lesser-included offenses based on imperfect self defense; that the court improperly struck witness testimony, which violated his confrontation rights; and that the court improperly permitted the State to recall Peavy for purposes of inquiring about his prior criminal conviction. After a hearing, the circuit court denied the motions.

¶10 Peavy appealed, raising only the argument relating to the circuit court's failure to provide his requested jury instructions. This court concluded that, based on the evidence, the circuit court did not err in refusing to provide the instructions for lesser-included offenses based on imperfect self defense. We therefore affirmed Peavy's judgment of conviction and the order denying his postconviction motions, *see State v. Peavy*, No. 94-3286-CR, unpublished slip op. (WI App Sept. 12, 1996), and our supreme court denied Peavy's petition for review.

¶11 In April 2024, Peavy filed the pro se WIS. STAT. § 974.06 postconviction motion underlying this appeal.[3] In that motion, he alleged both his trial counsel and postconviction counsel were ineffective for failing to (1) "investigate" Purifoy's actions that night and obtain a statement from him; (2) "investigate" the nature, extent and location of Terry's wound, which Peavy believes demonstrates that he did not intend to kill her; and (3) "investigate" the State's "manipulative intent" in charging Peavy with intentional homicide and

---

[3] In the intervening years, Peavy successfully challenged his restitution order, which was vacated in December 2017.

attempted homicide rather than robbery and felony murder, which would have reduced his sentence exposure.

¶12    The circuit court found that Peavy failed to establish that his current claims were clearly stronger than those claims brought in his direct appeal. Furthermore, the court found his current claims lacked merit. It therefore denied his motion without a hearing. This appeal follows.

## DISCUSSION

¶13    In a motion brought under WIS. STAT. § 974.06, a defendant must demonstrate that there is a "sufficient reason" that the claims in that motion were not raised in a prior motion or direct appeal. *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185-86, 517 N.W.2d 157 (1994). Whether a § 974.06 motion alleges a sufficient reason "for failing to bring available claims earlier" is a question of law that we review de novo. *State v. Romero-Georgana*, 2014 WI 83, ¶30, 360 Wis. 2d 522, 849 N.W.2d 668.

¶14    "In some instances, ineffective assistance of postconviction counsel may be a sufficient reason for failing to raise an available claim in an earlier motion or on direct appeal." *Id.*, ¶36. However, "a defendant who alleges in a [WIS. STAT.] § 974.06 motion that his postconviction counsel was ineffective for failing to bring certain viable claims must demonstrate that the claims he wishes to bring are clearly stronger than the claims postconviction counsel actually brought." *Romero-Georgana*, 360 Wis. 2d 522, ¶4. "The 'clearly stronger' standard is appropriate when postconviction counsel raised other issues before the circuit court, thereby making it possible to compare the arguments now proposed against the arguments previously made." *Id.*, ¶46.

¶15    In other words, a defendant is precluded from raising any claim in a WIS. STAT. § 974.06 motion if that claim could have been brought on direct appeal, *see* ***Escalona-Naranjo***, 185 Wis. 2d at 185, unless he or she can demonstrate that the claim is "clearly stronger" than the claims appellate counsel previously brought, *see* ***Romero-Georgana***, 360 Wis. 2d 522, ¶4.  If the defendant cannot establish that claims brought under § 974.06 are clearly stronger, then the claims are procedurally barred.  ***Romero-Georgana***, 360 Wis. 2d 522, ¶¶4-5.

¶16    In addressing the clearly stronger standard in his motion, Peavy provides no meaningful comparison of his current claims to those previously brought by his postconviction counsel.  *See id.*, ¶46.  Rather, he simply makes a conclusory statement that his current claims are stronger because they would have led to a different outcome as "reasonable doubt would have been established."  As such, in addition to failing to overcome the procedural bar, Peavy also failed to sufficiently plead his claims.  ***State v. Allen***, 2004 WI 106, ¶15, 274 Wis. 2d 568, 682 N.W.2d 433 ("It has been said repeatedly that a postconviction motion for relief requires more than conclusory allegations.").

¶17    In his appellate brief, Peavy expands on his clearly stronger argument by asserting that it does not apply to his claims.  In support, he cites ***State v. Starks***, 2013 WI 69, 349 Wis. 2d 274, 833 N.W.2d 146, *abrogated by* ***State ex rel. Warren v. Meisner***, 2020 WI 55, 392 Wis. 2d 1, 944 N.W.2d 588, in which the majority stated that the clearly stronger standard does not apply to every type of ineffective assistance claim, "such as the failure to investigate."  *Id.*, ¶60 n.12.  This note was in response to a point made by the dissent in ***Starks*** regarding the "practical application" of the clearly stronger test; specifically, that counsel has a duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," and therefore a reviewing court

would not need to determine whether a claim not previously raised was clearly stronger if "the allegation of ineffectiveness is premised upon a failure to adequately investigate a claim in the first place." *Id.*, ¶99 (Bradley, J. dissenting) (citation omitted).

¶18 First, we review only the allegations contained in the four corners of a postconviction motion. *Allen*, 274 Wis. 2d 568, ¶27. Furthermore, Peavy's labeling of his current ineffective assistance claims as a "failure to investigate" does not necessarily reflect the true nature of the claims, particularly with regard to his second and third claims. *See Amek bin-Rilla v. Israel*, 113 Wis. 2d 514, 521, 335 N.W.2d 384 (1983) (explaining that courts review a pro se litigant's pleadings based on the allegations contained within them, not the labels). And, regardless of the label Peavy has given his claims, they nevertheless fail on the merits.

¶19 To prevail on a claim of ineffective assistance of counsel, a defendant must prove both that trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove that counsel was constitutionally deficient, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To prove prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The court need not address both prongs of the test if the defendant "cannot make a sufficient showing" on one. *State v. Mayo*, 2007 WI 78, ¶61, 301 Wis. 2d 642, 734 N.W.2d 115.

¶20 Furthermore, to establish that postconviction counsel was ineffective, the defendant "bears the burden of proving that trial counsel's performance was deficient and prejudicial." *State v. Ziebart*, 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369. The "ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶21 Peavy focuses particularly on his first claim that his trial and postconviction counsel were ineffective for failing to investigate Purifoy and obtain a statement from him regarding the events of that night. Indeed, Peavy attached to his motion an affidavit by Purifoy, in which he states that neither Peavy nor Johnson knew he intended to rob the tavern, nor did they know he was armed. Purifoy further admits to shooting Chris during the altercation because he thought Chris was reaching for a gun, and to taking money from the cash register. Finally, Purifoy states that he was never contacted by counsel for Peavy to provide a statement, although counsel told Peavy that Purifoy had refused an interview.

¶22 Peavy argues this statement by Purifoy "bolsters his defense" that he did not shoot Chris, nor did he "intentionally end[] the life of Terry," demonstrating that both trial and postconviction counsel were ineffective for failing to investigate this.[4] However, as the circuit court pointed out, there are several "complications" implicated in this claim. First, Purifoy had "placed a great deal of culpability upon Peavy" in his statements to police after the shooting.

---

[4] Peavy does, however, acknowledge that he was convicted of being a party to a crime for the attempted first-degree intentional homicide count relating to Chris's shooting, as well as for Terry's death.

In fact, the State provided an excerpt from Purifoy's plea hearing on October 18, 1993, where Purifoy claimed that Peavy had shot Chris as well as Terry.[5]  Thus, regardless of whether Peavy's trial counsel sought an interview from Purifoy, Purifoy's testimony at his plea hearing supports the decision by counsel not to call him as a witness for Peavy's trial.

¶23    Moreover, Purifoy did not resolve his own case relating to this incident until after Peavy's trial.  It therefore seems unlikely that Purifoy's counsel would have permitted him to testify on behalf of Peavy, as Purifoy's testimony could have then been used against him.  Additionally, as the circuit court observed, the "familial relationship" between Peavy and Purifoy suggests that there may be "some level of reduced credibility" to Purifoy's purported testimony.

¶24    "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *State v. Leighton*, 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126 (citation omitted).  Given all of the "complications" surrounding Purifoy's statement, Peavy has not established that counsel performed deficiently in failing to call Purifoy as a witness at trial.  *See Strickland*, 466 U.S. at 691.

¶25    Peavy's second claim is that his trial counsel failed to "investigate" the nature, extent and location of Terry's fatal wound.  However, Peavy does not actually challenge the manner in which Terry died.  Indeed, the medical

---

[5] Purifoy pled no contest to one count of attempted first-degree intentional homicide and one count of first-degree reckless homicide, both while using a dangerous weapon and as a party to a crime.  *See State v. Purifoy*, No. 95-1387-CR, unpublished slip op. (WI App Apr. 9, 1996).

examiner's report established that Terry was shot in the chest near her shoulder, with the bullet perforating her spinal cord resulting in her death. There was nothing further to investigate as to the cause of her death.

¶26 Rather, Peavy's claim relates to the intentional homicide charge for Terry's death. Put another way, Peavy argues that his trial counsel should have more zealously challenged that it was not Peavy's intent to kill Terry. Peavy notes that he did not aim for "any of [Terry's] vital organs," since the bullet entered her chest through her shoulder. Nevertheless, during his testimony, Peavy admitted to shooting Terry at close range when she ran up behind him, with a defective gun that required the cylinder to be manually turned before firing. Furthermore, the record reflects that counsel did in fact address the element of intent for the homicide charge during his closing argument.

¶27 We are not persuaded that Peavy has established that his trial counsel performed deficiently with regard to challenging Peavy's intent to kill Terry. It was up to the jury to weigh the evidence, including the defective gun and the credibility of Peavy's testimony about his lack of intent, to determine whether the State had met its burden of proving first-degree intentional homicide. *See State v. Poellinger*, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990) ("It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Peavy's argument that counsel could have put forth a more compelling argument regarding intent during the trial is mere speculation, and a challenge to counsel's representation must be based on more than speculation. *See Leighton*, 237 Wis. 2d 709, ¶38.

¶28     In a similar vein, Peavy's third claim is that trial counsel was ineffective for failing to "investigate" the State's decision to charge him with intentional homicide as opposed to felony murder.  The charging decision requires no investigation.   The State has "broad discretion" in determining whether to charge an accused and which offenses to charge, because it is "answerable to the people of the state and not to the courts or the legislature" regarding the manner in which it exercises that discretion.  *See* ***State v. Krueger***, 224 Wis. 2d 59, 67-68, 588 N.W.2d 921 (1999).  "An attorney does not perform deficiently by failing to make a losing argument."  ***State v. Jacobsen***, 2014 WI App 13, ¶49, 352 Wis. 2d 409, 842 N.W.2d 365.

¶29     Nevertheless, Peavy argues that counsel should have addressed this issue by "developing and presenting the facts of the robbery to the jury." However, the jury did hear testimony from the employee that one of the men took money out of the cash register before fleeing the tavern.  Peavy fails to explain how any further argument by counsel regarding the robbery would have affected the charges brought against him.  *See* ***Krueger***, 224 Wis. 2d at 67-68.

¶30     In fact, we observe that Peavy's argument for this claim appears to be an attempt to relitigate the issue of providing jury instructions for lesser-included offenses.  This is not permitted.  *See* ***State v. Witkowski***, 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991) ("A matter once litigated may not be relitigated in a subsequent postconviction proceeding no matter how artfully the defendant may rephrase the issue.").

¶31     In short, Peavy fails to demonstrate that his trial counsel performed deficiently, and his claims therefore fail.  *See* ***Strickland***, 466 U.S. at 688; ***Mayo***,

301 Wis. 2d 642, ¶61. As a result, he also has not established that his postconviction counsel was ineffective. *See **Ziebart***, 268 Wis. 2d 468, ¶15.

## CONCLUSION

¶32 Peavy's ineffective assistance of counsel claims are either procedurally barred, *see **Romero-Georgana***, 360 Wis. 2d 522, ¶5, or fail on the merits, *see **Strickland***, 466 U.S. at 687. Accordingly, we affirm the orders denying his postconviction motion and motion for reconsideration.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.