COURT OF APPEALS
DECISION
DATED AND FILED

June 11, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP827-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF600

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DONALD L. GILMORE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Rock County: JOHN M. WOOD, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Donald Gilmore appeals a judgment of conviction and a circuit court order denying his motion for postconviction relief. The

question posed in this appeal is: If Gilmore's trial counsel had moved to dismiss the case based on a constitutional speedy trial claim, should the circuit court have granted the motion? We conclude that the answer is no. For that reason, we reject Gilmore's argument that the circuit court erred in denying Gilmore's postconviction motion, which claimed ineffective assistance of trial counsel, without holding a hearing. Accordingly, we affirm.

## BACKGROUND

### *Arrest and charges*

¶2     On June 17, 2019, Gilmore was arrested in this case. In a criminal complaint filed on June 19, 2019, the State charged Gilmore with first-degree recklessly endangering safety while using a dangerous weapon and felon in possession of a firearm.[1] Cash bond was set at $30,000, he did not post this bond, and he remained in custody until a jury trial was held on September 20-21, 2021.

¶3     The complaint alleged the following. In the parking lot of an apartment building in Beloit, Gilmore fired a semi-automatic pistol at the victim and then tried again to shoot the victim while Gilmore and the victim engaged in a physical struggle, but a shell casing jammed in the pistol chamber and the victim was not struck by a round.

---

[1] Later, the State would file an amended information to add one count of attempted first-degree intentional homicide while using a dangerous weapon and two misdemeanor counts of victim intimidation.

*Initial hearings; rescheduling of trial date from*
*October 14 to December 16, 2019*

¶4      Following Gilmore's arrest, at an initial appearance hearing on June 19, Gilmore said, "I want a speedy trial."

¶5      A preliminary examination was held on July 1, 2019. A circuit court commissioner ordered Gilmore bound over for trial. Gilmore's appointed counsel, Robert C. Howard III, said at this hearing that Gilmore was moving for a speedy trial.

¶6      Similarly, at the arraignment on July 18, 2019, Attorney Howard repeated the motion for a speedy trial. Also at the arraignment, Howard advised the circuit court commissioner that he could no longer represent Gilmore, but said that he had alerted the state public defender's office of the need for the appointment of new counsel.

¶7      At a status conference in the circuit court on July 31, 2019, Attorney Howard appeared again for Gilmore, because Howard said that new counsel had not yet been appointed. Howard told the court that Gilmore continued to request a speedy trial. Howard and the circuit court both construed Gilmore's motion as asserting a statutory demand for a speedy trial, which, if violated, could result in the statutory remedy of pretrial release.[2]  The court noted that, to satisfy the

---

[2] *See* WIS. STAT. § 971.10(1), (2), (4) (providing that, when a defendant makes a speedy trial demand, trial of any misdemeanor shall commence within 60 days following initial appearance, and trial of any felony shall commence within 90 days following a demand after arraignment, and that the remedy for a violation is an order requiring that the defendant be released from pretrial custody); *State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324 (remedy for violation of constitutional right to speedy trial is dismissal of the charges).

All references to the Wisconsin Statutes are to the 2023-24 version.

statutory right that could trigger mandatory pretrial release, a jury trial on the misdemeanors would have to commence no later than September 16, 2019, and a trial on the felonies no later than October 16, 2019. The court set the case over for a hearing on August 6 before a court commissioner, and at the August 6 hearing, an assistant state public defender represented that Attorney Jason Gonzalez would represent Gilmore under a private bar appointment through the state public defender's office.

¶8    At an August 16, 2019 hearing in the circuit court, Attorney Gonzalez appeared with Gilmore. Gonzalez repeated that Gilmore was demanding a speedy trial, with both Gonzalez and the court again treating this as a statutory speedy trial demand. The court scheduled the felony trial to commence on October 14, 2019, and the misdemeanor trial for September 16, 2019.

¶9    On October 10, on the eve of the scheduled felony trial, two things happened: the State filed a motion to continue the trial and to "toll the time limits on [the] speedy trial demand"; and the court held a final pretrial conference.

¶10    In its motion, the State requested that the circuit court postpone the trial on the ground that, if the case were tried as scheduled beginning on October 14, Attorney Gonzalez was not in a position to provide Gilmore with constitutionally effective assistance of counsel. In support, the State asserted that: Gilmore had claimed that he had not yet reviewed discovery in the case, which included DNA and ballistic analysis recently received by Gonzalez; Gilmore had claimed that he had had inadequate communications with Gonzalez; Gilmore had told the circuit court that his vehicle was illegally searched, but no suppression motion had been filed; Gonzalez "has indicated" that "he hasn't had time to adequately prepare" for trial; and police had obtained "downloads from 4 of the 9-

10 cell phones recovered from" Gilmore, but "the State had not seen this data, nor been able to turn it over to the defense."

¶11    At the October 10 hearing, Attorney Gonzalez said that he did not "take any exception to" the State's motion to continue the trial, and that none of the assertions in the State's motion were "surprising" to Gonzalez. Gilmore said that he "kind of agree[d] with" the State's motion.[3]

¶12    Also during this hearing, Gonzalez said, "I don't think we're in a position to go to trial," because the information in the seized cell phones was "still being analyzed." On this issue, the prosecutor took the position that the data obtained from the seized cell phones would be "meaningless" and "irrelevant" to the State's case, in light of extensive inculpatory evidence. The prosecutor added, "I'm ready to go to trial." But the prosecutor also said that Gilmore "might want to know what's on those phones," because "it's possible there could be some kind of exculpatory evidence on there."

¶13    Attorney Gonzalez further said that, despite the fact that he had just participated in three trials over the previous 60 days (including one trial conducted on the day before the hearing), he could try this case on October 14, so long as Gilmore was willing to state on the record that Gilmore was aware that Gonzalez and Gilmore would be "going into this somewhat blind, not knowing what all the evidence is."

---

[3] In an obvious typographical error, the transcript of this hearing attributes to Attorney Gonzalez the statement, "I kind of agree with" the State's motion for a continuance. Strong contextual clues establish that this statement was made by Gilmore, not Gonzalez.

¶14    The prosecutor represented that the defense had received from analysts a DNA report on October 2 and a ballistics report on October 4. Gilmore said that he had not seen the analysts' reports, or for that matter any other discovery material in the case. The circuit court said that there was nothing in the record to "suggest [that] anyone is delinquent in fulfilling their obligations under the law," and the court noted that the processing, analysis, and reporting regarding evidence of the type at issue routinely requires months to complete.

¶15    The circuit court granted the State's motion for a continuance, scheduling the felony trial to commence on December 16, 2019, and determining that there was good cause to toll the statutory speedy trial 90-day deadline.[4] The court relied in part on the fact that Gilmore had represented that he had not seen any of the discovery in the case, and the court also noted the potential need for the defense to consider filing appropriate pretrial motions, such as a motion to suppress evidence.

*Continuance of trial scheduled for December 16, 2019, to February 24, 2020*

¶16    At a final pretrial conference on December 11, 2019, the State asked the circuit court to find good cause to continue the trial again. This time the reason was that at least one officer who would be a trial witness had just been involved in an unrelated fatal shooting incident and been placed on administrative leave, and therefore any such witness could not testify until the investigation of the

---

[4] Under WIS. STAT. § 971.10(3)(a), when a defendant has made a statutory speedy trial demand, a circuit court may grant a continuance that postpones the trial beyond the statutory speedy trial deadline "if the ends of justice served by taking the action outweigh the best interest of the public and the defendant in a speedy trial" and if the court makes a sufficient record of that determination. *See* § 971.10(3)(b) (setting forth non-exclusive factors for consideration).

fatal shooting was completed. The prosecutor represented that the administrative leave could last for at least 45 days. Attorney Gonzalez told the court that Gilmore objected to a continuance of the trial date. The court granted the State's motion for a continuance. The court ruled that it was in the interests of the defense and of the prosecution, as well as in the general interest of justice, to continue the trial until all witnesses would be available and for both sides to learn if there was anything about the fatal shooting incident that could affect the credibility of any witness.

¶17 At a hearing on December 18, 2019, the prosecution represented that the "lead investigating officer in this case"—who the prosecutor said had "interviewed pretty much every witness in this case" and had been "active in documenting the [crime] scene, in [taking] custody of some of the evidence"— remained on administrative leave, but that "if we set the trial in 60 days[,] that should be a safe realm for being able to go forward." The circuit court denied Gilmore's motion that he be released on a signature bond, and the court rescheduled the felony trial to commence on February 24, 2020, and the misdemeanor trial for January 13, 2020.

*Continuance of trial from February 24 to May 4, 2020*

¶18 The next final pretrial conference had two parts, the first part taking place on February 19, 2020. The prosecutor represented that the State was having difficulty in serving a testimonial subpoena for trial on the victim, and the prosecutor suggested that Gilmore was to blame for that. The prosecutor alleged that Gilmore had been recorded in a jail phone conversation "telling or suggesting" to someone that the other person contact the victim to "tell him not to come to court and not to testify."

7

¶19    The next day, February 20, 2020, the State filed a motion in which it supported the allegation of witness tampering with transcripts of jail recordings and moved to continue the trial date, based on the State's continued inability to serve a trial subpoena on the victim and to give the State a chance to obtain a material witness warrant for the victim pursuant to WIS. STAT. § 969.01(3).

¶20    The second part of the final pretrial conference was held on February 21, 2020. The prosecutor reported that "the chances of getting [the victim] here for trial by Monday are slim and none," despite diligent efforts, because "it's clear that [the victim is] hiding out in some fashion to avoid coming to court." The prosecutor asked the circuit court to continue the trial or, in the alternative, to rule that the forfeiture-by-wrongdoing doctrine applied, so that the State would be permitted to introduce as evidence prior statements made by the victim incriminating Gilmore, despite the hearsay nature of the victim's statements. The court granted the State's motion for a continuance in the interests of justice. The court rescheduled the trial to May 4, 2020. This was in part based on the court making the following finding: Gilmore had "encourag[ed]" the person on the other end of jail phone calls to contact the victim to "make sure that [the victim] didn't show up" and that Gilmore did this "with the hope and expectation that the case would be dismissed."

*Withdrawal of Attorney Gonzalez; appearance of Attorney Compton; pandemic delays result in multiple trial reschedulings, eventually continued to April 12, 2021*

¶21    On March 9, 2020, Attorney Gonzalez moved to withdraw from representing Gilmore, citing the fact that Gilmore had filed a complaint against him with the Office of Lawyer Regulation. The circuit court granted the

withdrawal motion at a hearing on March 19, 2020. Attorney Stephen Compton filed an appearance on behalf of Gilmore on March 20, 2020.

¶22     Beginning at a status conference on April 9, 2020, and continuing to a status conference on March 10, 2021, the circuit court reset and then struck multiple new dates for the trial, all based on various iterations of prohibitions on jury trials due to the COVID-19 pandemic. As discussed below, Gilmore's argument on appeal directed at the delay in the trial resulting from the pandemic does not include a challenge to the iterations of prohibitions on jury trials due to the pandemic imposed during the pertinent period here. Instead, he emphasizes the fact that Gilmore was confined throughout the pretrial proceedings. Therefore, only limited background regarding this period is pertinent. On July 15, 2020, Attorney Compton filed a motion to modify Gilmore's bail status from a $30,000 cash bond to a $15,000 signature bond with a $1,000 cash component. The circuit court held a hearing on the motion and, after hearing arguments, denied the motion to modify bond.

¶23     At the March 10, 2021 status hearing, the circuit court scheduled trial for April 12, 2021.

*Withdrawal of Attorney Compton; appointment of Attorney Freeman, followed by Attorney Frost; scheduling of trial date to September 20, 2021*

¶24     On April 9, 2021, Attorney Compton moved to withdraw as counsel based on what he characterized as a deteriorating relationship with Gilmore. At a hearing on this motion, Gilmore agreed with Compton that the two could no longer cooperate on the case sufficiently to adequately defend it. The court allowed Compton to withdraw, rejecting an argument by the State that Gilmore had forfeited his right to counsel by failing to cooperate with counsel in a civil

9

manner. On April 19, 2021, Attorney Kelly Freeman was appointed to represent Gilmore.

¶25 At an April 29, 2021 status conference, the circuit court scheduled trial for September 20, 2021. This date was selected because earlier dates available on the court's calendar conflicted with trials already set for either Attorney Freeman or the prosecution.

¶26 After it was discovered that Attorney Freeman was not certified by the public defender to handle a case with such serious charges, the public defender replaced her with Attorney Melissa Frost on May 24, 2021.

¶27 On August 8, 2021, Attorney Frost filed a motion asking the circuit court to modify Gilmore's cash bond amount to a signature bond "based on his denied speedy trial demand." The motion stated that it was directed exclusively at the statutory speedy trial remedy and not the constitutional speedy trial remedy. The motion pointed out that Gilmore had objected to the State's prior motions to continue the trial. At a hearing on the motion on August 26, 2021, the court summarized pertinent aspects of the history of the case and denied the motion to modify bond.

*Trial on September 20, 2021; postconviction motion*

¶28 Trial commenced on September 20, 2021, with Attorney Frost representing Gilmore. On September 21, the jury returned verdicts of guilty on charges of: attempted second-degree intentional homicide while using a dangerous weapon; first-degree recklessly endangering safety while using a dangerous weapon; felon in possession of a firearm; and misdemeanor intimidation of a witness. Gilmore was acquitted on a separate witness intimidation count.

¶29 After sentencing, and represented by postconviction counsel, Gilmore moved for an order vacating the convictions and dismissing the case on the ground that his trial counsel had been constitutionally ineffective in failing to move for dismissal based on a violation of Gilmore's right to a speedy trial under the federal and state constitutions. *See Strickland v. Washington*, 466 U.S. 668 (1984) (establishing test for constitutional ineffective assistance of counsel, requiring showings of deficient performance and resulting prejudice); *see also* U.S. CONST. amend. VI and WIS. CONST. art I, § 7 (guaranteeing the accused the right to a speedy trial). In response, the State argued that such a motion would have been denied and therefore trial counsel was not ineffective in failing to pursue it. The circuit court ruled that there was no need to hold a *Machner* hearing to probe the strategic choices of any of Gilmore's trial attorneys on this topic, because the court would have denied a constitutional speedy trial claim if it had been pursued.[5]

¶30 Gilmore appeals.

## DISCUSSION

¶31 Gilmore does not dispute that, if there had been a motion that the circuit court dismiss the case based on an alleged violation of his constitutional right to a speedy trial that would properly have been denied, then we must affirm the circuit court. *See State v. Maloney*, 2005 WI 74, ¶37, 281 Wis. 2d 595, 698 N.W.2d 583 (trial counsel does not render deficient performance for failing to bring a motion that would have been denied); *State v. Allen*, 2004 WI 106, ¶9, 274

---

[5] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

11

Wis. 2d 568, 682 N.W.2d 433 ("if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny [an evidentiary] hearing").

¶32    As noted above, the right to a speedy trial is constitutionally guaranteed.  Precedent of the United States Supreme Court and our supreme court establishes a four-factor balancing test to determine whether a constitutional speedy trial violation has occurred: (1) the overall length of the delay; (2) the reason or reasons for delays; (3) the defendant's assertion of the speedy trial right; and (4) prejudice to the defendant.  *State v. Ramirez*, 2025 WI 28, ¶30, 416 Wis. 2d 641, 22 N.W.3d 821 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). "Like any balancing test, it requires the court to consider the totality of circumstances particular to the case."  *Id.*, ¶30 (citing *Barker*, 407 U.S. at 530).

¶33    "Whether a defendant has been denied the right to a speedy trial is a constitutional question that this court reviews de novo."  *State v. Leighton*, 2000 WI App 156, ¶5, 237 Wis. 2d 709, 616 N.W.2d 126.  In contrast, the circuit court's pertinent findings of historical fact are upheld unless they are clearly erroneous.  *Id.*

### A.  Length of the delay

¶34    "Before a court conducts a speedy trial analysis, the defendant 'must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay.'"  *Ramirez*, 416 Wis. 2d 641, ¶31 (citation omitted).  "Generally, a post-accusation delay approaching one year is considered to be presumptively prejudicial."  *State v. Urdahl*, 2005 WI App 191, ¶12, 286 Wis. 2d 476, 704 N.W.2d 324.  "After the defendant establishes a delay 'beyond the bare minimum needed to trigger judicial

examination,' the length of the delay should then be considered in conjunction with the other [three] factors and especially informs the prejudice inquiry." **Ramirez**, 416 Wis. 2d 641, ¶32 (citation omitted). "'[T]he presumption that pretrial delay has prejudiced the accused intensifies over time.'" **Urdahl**, 286 Wis. 2d 476, ¶12 (quoted source omitted).

¶35 The parties here agree that the post-accusation delay was 826 days, or just over 27 months, more than twice the "presumptively prejudicial" period of "approaching one year." *See **id.*** But while presumptively prejudicial, it is not "extraordinarily long." *See **id.***, ¶¶12, 25, 32, 37 (stating that a 21.5-month pretrial delay attributable to the State, as part of 30-month delay, was "certainly a long period of time, but not extraordinarily long"); **Ramirez**, 416 Wis. 2d 641, ¶¶15, 53 n.8 ("courts generally do not hold [that] a defendant has been prejudiced as a matter of law until the delay reaches five to six years"; addressing delay of three years and eight months).

### B. Reasons for delays

¶36 The reasons-for-delays factor "examines whether the State or the defendant is more to blame for the time that passed from accusation to conviction." **Ramirez**, 416 Wis. 2d 641, ¶39. In order to address the reasons for the overall delay, courts are to identify the reason or reasons for each component period of delay, and then "accord different treatment to each category of reasons" for each component period. *See **Urdahl***, 286 Wis. 2d 476, ¶26. "A delay caused by the defendant is not attributed to the State" and therefore does count toward a violation of the defendant's speedy trial right. **Ramirez**, 416 Wis. 2d 641, ¶39. "Likewise, 'time required for the orderly administration of criminal justice' is not to be considered a 'delay' at all." **Id.** (quoted source omitted). The time required

13

for orderly administration "includes the time that elapses due to pretrial requirements, such as filing the complaint; conducting the initial appearance, preliminary hearing, and arraignment; setting the trial date; and hearing pretrial motions, so long as they occur 'expeditiously without delay.'" *Id.* (quoted source omitted).

¶37    "Delays attributable to the State are categorized as valid, neutral, or deliberate." *Id.*, ¶40. A delay caused by the State for a valid reason is not weighed against the State, which is to say that such a delay does not support concluding there has been a violation of the right to a speedy trial. *Id.* These include delays "'intrinsic to the case itself,' such as adjournments required for competency evaluations or the absence of an essential witness." *Id.* (quoted source omitted). A delay explained by a neutral reason is weighed against the State, "but not heavily." *Id.*, ¶41. These include delays caused by "the State's negligence, overcrowded courts, inadequate judicial resources, and mounting caseloads." *Id.* "Periods of delay caused by deliberate or bad-faith conduct are weighed heavily against the State." *Id.*

*June 17 to October 14, 2019*

¶38    We begin with a period here that did not constitute "delay" at all because it involved events required for the orderly administration of justice. *See id.*, ¶39. Gilmore implicitly concedes through silence that the State is correct when it argues that the 119 days that passed between his arrest on June 17, 2019, and the first scheduled trial date of October 14, 2019, falls outside discussion of the second *Barker* factor. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that appellant's failure to

14

respond in reply brief to an argument made in response brief may be taken as a concession).

*October 14 to December 11, 2019*

¶39 We next consider the 58 days from the first scheduled trial date of October 14, 2019, to the final pretrial hearing on December 11, 2019, before the next scheduled trial date of December 16, 2019. As summarized above, this delay was prompted by the State's motion for a continuance, which was based on facts that included ongoing analysis of evidence by both sides, Attorney Gonzalez not being prepared for trial, and Gilmore representing, on October 10, that he had not seen any discovery in the case. For the following reasons, we conclude that this delay was caused by Attorney Gonzalez's lack of preparedness and therefore cannot be attributed to the State, but instead to the defense.

¶40 Attorney Gonzalez sent highly concerning signals about his lack of readiness for trial. He concurred with the State's motion describing him as unprepared for trial. At one point he explicitly said, "I don't think we're in a position to go to trial." Further, he described the defense as being "somewhat blind" regarding "what all the evidence is" going into trial. Beyond that, while Gonzalez said that Gilmore wanted to go to trial and that Gonzalez was willing to try the case in the coming days, Gonzalez would do this only if Gilmore acknowledged on the record that the defense would be "somewhat blind" about the evidence. Even in the course of telling the circuit court that he was willing to try the case, Attorney Gonzalez was equivocal about his actual ability to do so, suggesting that he would have to work "for the next 36 hours—three days" to "make next week work if that's what [Gilmore] so chooses." In addition, on the

15

eve of trial, Gilmore represented that he had not reviewed any of the evidence, and Gonzalez did not correct or qualify Gilmore's representation on this point.

¶41    Gilmore argues that the "primary concern" expressed by Attorney Gonzalez involved data from cell phones seized by police, which Gilmore now suggests was not a significant issue. But the phone data was only one aspect of the case that Attorney Gonzalez suggested that he was at risk of not managing effectively in Gilmore's interests.

¶42    Gilmore also contends that, because the circuit court's decision to continue the trial at this stage was prompted by a prosecution motion, and because Gilmore took the ultimate position that he wanted to proceed to trial, the delay "can only be attributed to the State." Gilmore fails to cite authority for this proposition, and we reject it. The circuit court was certainly not obligated to agree with the prosecution's position that the court should continue the trial date based on the failure of the defense to prepare adequately. But the record strongly supports the court's independent determination that the defense was not ready for trial, based on the court's familiarity with the proceedings to that time and statements made by Attorney Gonzalez and Gilmore. Further, Gilmore's own position was not entirely clear. While Gilmore ultimately took the position that the trial should not be continued, he also said that he "kind of" agreed with the motion by the prosecution for a continuance and also represented that he had not reviewed any of the discovery materials.

¶43    Gilmore suggests that the circuit court, in granting the continuance, "usurp[ed] the defense's ability to make strategic decisions as to when to hold a trial, and what investigations to pursue, all in the name of preserving the defendant's right to counsel." But the court did not substitute its judgment for

Attorney Gonzalez's about any defense strategy. Instead, the record supports the court's assessment that the defense was not prepared for trial and therefore the trial date needed to be continued. This well-supported finding of a lack of preparation constitutes a reason for delay attributable to the defense.

*December 11, 2019 to February 21, 2020*

¶44 The next interval lasted 72 days, beginning with the December 11, 2019 final pretrial hearing and ending with the second part of the final pretrial hearing that occurred on February 21, 2020. As summarized above, this delay arose from the fact that an officer, whom the prosecution described as a critical witness, had been placed on administrative leave following an officer-involved shooting incident and was allegedly not available to testify for that reason. We attribute this delay to the State. But, even when we assume without deciding in Gilmore's favor that this delay was not valid but instead neutral, it is not weighed heavily against the State.

¶45 Gilmore contends that the circuit court erred in determining that the officer in the officer-involved shooting was unavailable to testify in this case. His position is that the officer was available to testify as a witness even though he had been placed on administrative leave. We assume without deciding that the court erred in appearing to accept the position of the prosecution that the officer was categorically unavailable to testify. But this assumption simply moves this period of delay from "valid" to "neutral," but not to "deliberate." Gilmore does not direct us to any evidence suggesting that the State deliberately or in bad faith used the officer-involved shooting or the administrative leave process as a pretext to obtain this continuance. In sum, regarding this period, the delay is weighed against the State but not heavily.

*February 21 to March 22, 2020*

¶46 Moving to the next, 30-day period, it lasted from February 21, 2020, until March 22, 2020, when the Wisconsin Supreme Court suspended jury trials statewide due to the pandemic, discussed below. As summarized above, the circuit court made findings, which are well supported by the record, that this delay was primarily caused by Gilmore's efforts to intimidate the victim into avoiding subpoena service and failing to appear as a witness, and therefore the delay is attributable to Gilmore.

¶47 If Gilmore intends to argue that the circuit court clearly erred in making this finding, he fails to support such an argument. Gilmore notes testimony that the victim eventually gave that the victim was not influenced by intimidation attempts allegedly orchestrated by Gilmore, but of course even if this testimony was credible, the court did not have access to it when it made its decision regarding the continuance.

*March 22, 2020 to April 12, 2021*

¶48 The next period, 386 days, runs through the pandemic prohibition on jury trials until April 12, 2021, which the circuit court set as the next scheduled trial date at the March 10, 2021 status hearing.[6] As referenced above, Gilmore does not provide a developed argument that the reasoning in a decision of this court, ***Coleman***, does not apply here. Under that reasoning, the pandemic-related delay "is properly attributed to the State, but we give it no weight against the

---

[6] We do not need to separately address the delay associated with Attorney Gonzalez withdrawing, to be replaced by Attorney Compton, starting in March 2020, because the pandemic-caused delay began that same month.

State."[7] ***State v. Coleman***, 2025 WI App 7, ¶45, 415 Wis. 2d 71, 17 N.W.2d 307 (2024); *see also **id.***, ¶56 (suspension of jury trials was "a reasonable government response" to the pandemic). Further, we recognized in ***Coleman*** that delay attributable to the heavy backlogs of cases, during the period following the post-pandemic resumption of trials, is attributed to the State, but is not weighed "so heavily." ***Id.***, ¶¶58, 61.

¶49 Instead, regarding this period, Gilmore asserts, "The State did not have to persist in its opposition to releasing Gilmore on a signature bond while his right to a speedy trial was being denied." But, at most, this would be an argument under the prejudice-and-balancing factor of the ***Barker*** test, not an argument regarding the reasons for delay for purposes of assigning responsibility, and so it is addressed separately under that factor below.

*April 12, 2021 to the trial date, September 20, 2021*

¶50 The final period of 161 days runs from the scheduled trial date of April 12, 2021, (a relatively early post-pandemic scheduled trial) to the trial date. As summarized above, this was occasioned by Gilmore and Attorney Compton both telling the circuit court that Compton needed to withdraw as trial counsel, after which Attorney Freeman was appointed, and then Attorney Frost was appointed. Gilmore appears to concede that this delay was attributable to him, because the 161 days were necessary to find and appoint new counsel, and for new counsel to learn the case and prepare for trial, after problems developed between

---

[7] Regarding the pandemic-related delay, Gilmore extensively quotes statements made by a justice dissenting from an order of our supreme court suspending jury trials, but he does not develop an argument from this dissent that the reasoning in ***State v. Coleman***, 2025 WI App 7, 415 Wis. 2d 71, 17 N.W.2d 307 (2024), does not apply here.

19

him and Attorney Compton. These were reasons that cannot be counted against the State. *See Ramirez*, 416 Wis. 2d 641, ¶39; *Vermont v. Brillon*, 556 U.S. 81, 85 (2009) ("[D]elays sought by counsel are ordinarily attributable to the defendants they represent.").

¶51 Summing up our conclusions on the second factor of the *Barker* test, of the total 707 days that count as delay, 58 plus 30 plus 161 (which equals 249) are attributable to Gilmore, while 72 days are weighed, but not heavily, against the State, and 386 are attributed to the State but given no weight. Further, none of the periods of delay in this case were caused by deliberate or bad-faith conduct on behalf of the State. The second factor strongly favors the State.

### C. Assertion of speedy trial right

¶52 "A defendant's assertion of the speedy trial right is 'entitled to strong evidentiary weight' because it 'is in itself probative of prejudice.'" *Ramirez*, 416 Wis. 2d 641, ¶49 (citations omitted). Here, Gilmore personally and through counsel repeatedly requested a speedy trial, although he did at least briefly express agreement with the State's motion for a continuance at the October 10, 2019 hearing. Accordingly, this factor weighs in Gilmore's favor.

### D Prejudice and balancing

¶53 "We consider three interests in assessing whether a defendant suffered prejudice due to a prolonged delay before trial: oppressive pretrial incarceration; anxiety and concern; and the possibility the defense will be impaired." *Id.*, ¶51. It is not necessary to show "prejudice in fact" in order to prove a speedy trial violation. *Leighton*, 237 Wis. 2d 709, ¶25.

¶54    Regarding the third interest, the United States Supreme Court "has recognized that impairment to the defense is the 'most serious'" of the three interests, "'because the inability of a defendant adequately to prepare his [or her] case skews the fairness of the entire system.'" *Id.*, ¶23 (quoting *Barker*, 407 U.S. at 532).

¶55    Gilmore asserts that he was prejudiced by his prolonged pretrial confinement, but he does not offer a well-developed argument.  That is, he does not direct us to evidence of substandard conditions of confinement, of any anxiety or concern greater than or different from that experienced by most confined arrestees, or of any impairment of his defense.  No doubt, imposing the consequences of pretrial detention "on anyone who has not yet been convicted is serious."  *Barker*, 407 U.S. at 533.  "[T]ime spent in jail awaiting trial has a detrimental impact on the individual.  It often means loss of a job; it disrupts family life; and it enforces idleness.  Most jails offer little or no recreational or rehabilitative programs.  The time spent in jail is simply dead time." *Id.* at 532-33 (footnote omitted).

¶56    Yet, as we have discussed, most of the reasons that the trial was delayed until September 2021 cannot be counted against the State.  Under these circumstances, Gilmore has failed to demonstrate significant prejudice as a result of his prolonged pretrial detention.

¶57    In sum, Gilmore has not shown that he was entitled to the "'severe remedy'" of dismissal of his charges, *see Ramirez*, 416 Wis. 2d 641, ¶55 (quoting *Barker*, 407 U.S. at 522), and therefore his trial counsel was not constitutionally ineffective for failing to move for that remedy.

21

## CONCLUSION

¶58     For all of these reasons, we affirm the circuit court's judgment and order.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.